John and Kathy MOORE, Plaintiffs,

v.

CRESTWOOD LOCAL SCHOOL
DISTRICT, Defendant.

No. 5:90 CV 1428.

United States District Court,
N.D. Ohio, E.D.

Aug. 3, 1992.

**962**

John M. Dohner, Buckingham, Doolittle & Burroughs, Akron, Ohio, for plaintiffs.

Susan Snyder McGown, Ronald J. Habowski, Gary L. Pierce, Christley, Herington, Pierce, Silver & Habowski, Aurora, Ohio, for defendant.

ORDER

SAM H. BELL, District Judge.

I. Introduction·

■ On August 8, 1990,. plaintiffs John and Kathy Moore filed the instant action

seeking recovery of attorney fees and costs incurred by them in a due process hearing and related proceedings to the Individuals With Disabilities Education Act, 20 U.S.C. § 1400 *et. seq.*, and specifically 20 U.S.C. § 1415(e) [hereinafter "IDEA"]. On the 4th of November, 1991, this court denied defendant Crestwood Local School District's motion for summary judgment and granted plaintiffs' motion for summary judgment, instructing plaintiffs' counsel to submit an itemized account of fees and costs incurred in the relevant proceedings. On December 5, 1991, plaintiffs submitted this account. On the 5th of February, 1992, this matter was referred to Magistrate Gallas, who scheduled and held a hearing on March 16, 1992. While the hearing was pending, plaintiffs raised their total fee and cost request to $48,065.27. On the 4th of June, 1992, the Magistrate issued his report and recommendation that plaintiffs be awarded a total of $21,834.50 of their request for attorney fees and $531.90 of their request for additional charges. On June 12, 1992, the plaintiffs filed a timely objection to the Magistrate's report. This court shall, pursuant to 28 U.S.C. § 636 and pertinent case law, conduct a *de novo* review of the Magistrate's report and recommendation.[1]

II. Background and Prior Proceedings

At the attorney's fee hearing, as noted by the Magistrate, the defendant "presented arguments which would have been more suitably presented to the Sixth Circuit than to this court." (Magistrate's Report at 4) While this court stands firmly behind its order granting plaintiffs summary judgment, the court shall briefly revisit that order to address defendant's primary argument and to provide context to the following opinion.

The plaintiffs in this action, the parents of Kevin Moore, a handicapped child, moved to the defendant school district and were unable to reach an agreement on which educational programs and services

---

1. All cites to the transcript of the attorney's fees hearing before the Magistrate are indicated as "Tr. at ___.".

were appropriate for Kevin. Frustrated with this stalemate, plaintiffs consulted an attorney who formally requested an impartial due process hearing pursuant to IDEA. This request initially outlined five (5) areas of concern. Several weeks later, the parties conducted an IEP conference to address the issues raised in the Moore's hearing request. At this conference, the defendant agreed to modify Kevin's IEP in accordance with plaintiffs' wishes.

A few days later, the plaintiffs' attorney wrote the defendants to request an additional topic for consideration at the due process hearing, an extended school year (ESY). The plaintiffs then sought a further broadening of the hearing officer's review, seeking an assessment of the propriety of the school district's behavior modification techniques. On the 1st of May, 1990, the due process hearing was held. The hearing officer's decision held that the first five requests of plaintiffs had been rendered moot by parties' agreement at the IEP conference and granted plaintiffs an extended school year and other relief. Following the hearing officer's decision, plaintiffs requested payment of their attorney's fees by the defendant. This request was denied. Plaintiffs then filed suit in this court seeking recovery of fees and costs pursuant of 20 U.S.C. § 1415(e)(4)(B). While this suit was actively pending, the defendant counterclaimed for fees, and the parties engaged in unexceptional discovery and motion practice. At pretrial conference, the parties agreed that their cross-motions for summary judgment were to resolve this case.

On summary judgment, the parties directed their efforts to the question of which was the prevailing party at the administrative level, and thus entitled to fees and costs. With the essential underlying facts undisputed, this question was the focus of the court's inquiry. This court granted plaintiffs' motion, noting that:

> [b]ecause of the very real fiscal and emotional impact IDEA cases evoke, this court has detailed in length a conclusion which could simply be inferred from the barest of facts. In other words, the plaintiff commenced the administrative litigation and, by its conclusion, succeeded in having a majority of their requests granted.

*Moore v. Crestwood Local School District,* No. 5:90 CV 1428, slip op. at 18 (N.D.Ohio Nov. 4, 1991) (order granting plaintiffs' motion for summary judgment) [hereinafter "Summary Judgment Order"].[2]

At the attorney's fees hearing, the defendant asserted that the plaintiffs did not succeed at the due process hearing because the hearing officer's grant of an ESY (extended school year) was not a proper remedy under IDEA.[3] (Tr. at 9) In support of this proposition, defendant relies upon *Cordrey v. Euckert,* 917 F.2d 1460 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991) In so doing, the defendant is clearly in error. In *Cordrey,* the Sixth Circuit explicitly approved the use of an ESY if this summer program "is necessary to avoid something more than adequately recoupable regression" and is "necessary to permit [the child] to benefit from his instruction." *Cordrey,* 917 F.2d at 1473. While this court was never asked to review the merits of the hearing officer's decision, it was

---

**2.** A review of the record reveals that this court inadvertently failed to rule on plaintiffs' outstanding and well-taken motion to strike the testimony of the due process hearing officer, Douglas Neumann. (Docket #28) While the court was aware of the existence of this less than probative testimony, such testimony was not considered for the purposes of the summary judgment ruling. Accordingly, this court grants plaintiffs' motion, *nunc pro tunc,* as of July 16, 1991.

**3.** The court must note that defendant did not raise this issue at summary judgment. Indeed, at that stage, defendant argued not only that it was the prevailing party but also, incredibly, that the hearing officer did not even grant the ESY request. (*See* Defendant's Motion for Summary Judgment at 1) (Docket #23) ("The issue before the court is whether Plaintiffs were the "prevailing party", as that term is used within the Act, and thereby entitled to an award of attorney's fees.) As such, this court is inclined to completely dismiss without comment the defendant's apparent attempt to appeal the substantive merits of the hearing officer's decision, a decision which until now they had looked upon with favor.

specifically noted in the summary judgment order that "an extended school year program can be considered an appropriate program under IDEA". (Summary Judgment Order at 13) Indeed, this court further noted that the hearing officer determined that "Kevin Moore requires a consistent behavior modification program for the current summer vacation in order to avoid significant regression without recoupment during the 1990–1991 school year...." (*Id.*) Accordingly, this court must agree with the Magistrate's conclusion that the defendant's arguments are not only inappropriate at this juncture, but also are unsupported by governing caselaw.

### III. Plaintiffs' Objection to the Fee Award

#### A. *Rates & Hours*

■ As correctly noted in the Magistrate's opinion, IDEA specifically provides for recovery of attorney fees and costs. 20 U.S.C. § 1415(e)(4)(B). Moreover, it is now clear that this provision permits plaintiffs prevailing at the administrative level to bring a separate action in district court for recovery of fees. *Eggers v. Bullitt County School District*, 854 F.2d 892, 898 (6th Cir.1988); *Moore v. District of Columbia*, 907 F.2d 165 (D.C.Cir.1990) [*vacating* 886 F.2d 335 (D.C.Cir.1989)], *cert. denied*, — U.S. ——, 111 S.Ct. 556, 112 L.Ed.2d 563 (1990).

The first substantive portion of the magistrate's recommendation determined the hourly rate of compensation to which plaintiff's counsel was entitled:

Defendants have no objections to the hours claimed by plaintiffs' counsel and hourly rates of $85 per hour general rate and $150 per hour for hearing time has been substantiated by plaintiffs as representing the "hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, experience and reputation" in accordance with § 1415(e)(4)(F)(ii). For the purpose of litigating the attorney fee case, plaintiffs' counsel claims rates of $125 and $135 per hour.

(Report at 9) The Magistrate apparently approved the application of the 85/150 dollars per hour rate for time spent at the administrative level. (Report at 11) As for time spent on the fee petition in this court, the Magistrate applied the following rate of remuneration:

Since a hearing on plaintiffs' attorney fee request was required this court finds that plaintiffs should be compensated at their counsel's current rate of $135.00 per hour for approximately 3 hours expended at the hearing with the remainder compensated at the out-of-court rate of $85.00 per hour that counsel charged in the case-in-chief.

(Report at 12) The plaintiffs object to this finding, arguing that the Magistrate:

erred in determining that the hourly rate of the Plaintiff's counsel during the Federal Court litigation, should be $135.00 for in court time and $85.00 for out-of-court time. The Magistrate Judge has made an improper comparison in reviewing the testimony given at the hearing before him. The testimony was that the counsel for Plaintiffs during the Due Process Hearing charged $85.00 per hour for out-of-court time and $150.00 per hour for in-court time. Plaintiffs' counsel further testified that the prevailing rate for his services now is a flat $135.00 per hour, not a mixed in-court/out-of-court rate. These rates were *confirmed* to be reasonable by a corroborating witness, Attorney David G. Umbaugh, and were *not contested* by counsel for the Defendant. The hourly rate calculation should be pursuant to the rates identified as reasonable by the testimony given at the hearing, and not a mix of what Plaintiffs' counsel charged over two years ago with what he is charging today.

(Plaintiffs' Objections to the Report and Recommendation of Magistrate Judge, James S. Gallas, Docket # 45 at 6) [hereinafter "Plaintiffs' Objections"] (emphasis added). This court finds plaintiffs' arguments persuasive.

■ Although case law on this precise subject is scarce, both logic and case authority suggest that "plaintiffs are entitled

to recover attorney fees at the market rates that were current at the time the services were rendered." *Kerr Center Parents Assoc. v. Lake Oswego School District,* 1990 WL 103709, 1990 U.S.Dist. LEXIS 8871 (D.Or.1990). *See Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984) (" 'reasonable fees' ... are to be calculated according to the prevailing market rates in the relevant community....") In light of both this authority and defendant's failure to persuasively object to plaintiffs' counsel's proffered hourly rates, this court holds that plaintiffs are entitled to fees at the rate of $85 per hour for out-of-court time and $150 per hour for in-court time consumed by performance of legal services at the administrative level, and $125 per hour for time spent at the district court level from July 3, 1990 to the 1st of January, 1992 and $135 per hour thereafter. Evidence supports a finding that these rates are reasonable. *See Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir.1992); (*See, e.g.,* Tr. at 10–13, 42–43)

■ Plaintiffs' primary objection to the Magistrate's report concerns his recommendation limiting the number of hours spent by plaintiff's counsel in pursuit of his fees. In determining the appropriate fee, one must determine, in addition to the reasonable hourly rate, the number of hours reasonably spent in pursuit of plaintiffs' claims. The court finds plaintiffs' counsel's time records entirely credible, not ob-

jected to by defendant[4], and indicative of "billing judgment". *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (*quoting Copeland v. Marshall,* 641 F.2d 880, 891 (1980)) (en banc) (emphasis in original).

### B. *Fee Calculation*

With reasonable hours and reasonable hourly rates established, this court must determine the appropriate fee. Under IDEA, as under "typical federal fee-shifting statute[s], the court will arrive at an attorney's fee by first determining the 'lodestar' amount, which is calculated by 'multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.' " *In re Boddy,* 950 F.2d 334, 337 (6th Cir.1991) (*quoting Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874, 879 (11th Cir.1990) (*citing Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). As the Supreme Court has repeatedly and consistently held, "the lodestar approach [is] the centerpiece of attorney's fee awards." *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989) The court may adjust the fee upward or downward, upon consideration of the "important factor of the 'results obtained' ". *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1940.[5] The Court

4. (Tr. at 7) ("We do not question nor challenge the amount of time that Mr. Dohner has put in, but we strenuously object under the standards of Section 1415 of the IDEA, whether or not the actual time put in was required and/or excessive under the circumstances of the case.") Thus, defendant did not object to the accuracy of plaintiffs' counsel's records, but rather to the reasonableness of the time spent. This court accepts plaintiffs' characterization of events. *See, infra* this order, p. 970–72; Tr. 76–81. *See Blum v. Stevenson,* 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891 (1984) (citations omitted) ("As noted above, petitioner failed to submit to the District Court any evidence challenging the accuracy or reasonableness of the hours charged, or the facts asserted in the affidavits submitted by [plaintiffs'] counsel. She therefore ... waived her right to challenge in this Court the District Court's determi-

nation that the number of hours billed were reasonable for cases of similar complexity.")

5. The Court also noted that courts may consider other factors identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974). These factors include: the time and labor required, the novelty and difficulty of the questions, the skill requisite to perform the legal services properly, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or circumstances, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases. *Id.* The Court noted, however, that a great deal of these factors "are

described this meditation in the following manner:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.
>
> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.
>
> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole time a reasonable hourly rate may be an excessive amount.... Again, the most critical factor is the degree of success obtained.

*Hensley v. Eckerhart,* 461 U.S. at 435–436, 103 S.Ct. at 1940–41 (citations omitted). The Sixth Circuit has restated this analysis in the following manner:

> The modified *Kelley* [6] standard, which is not a "total break" from the *Northcross* approach, requires that if the litigation can be viewed as a series of discrete claims, then those claims may be analyzed individually in order to parse our those that were successful from those that were not. If, however, the case effectively revolves around one claim and a core of common facts, ... then the "overall result" will remain the primary factor in determining counsel fees.

*Lewis v. Sears Roebuck & Co. (In re Lewis),* 845 F.2d 624, 631–32 (6th Cir.1988)

In *Lewis,* the plaintiff was an African-American woman alleging discriminatory termination under Michigan's civil rights laws and Title VII. The jury agreed with plaintiff's contentions at trial while the court, in separate findings of fact, found no discriminatory discharge on plaintiff's Title VII claim. Plaintiff moved for reinstatement to the position and restora-

---

subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate". *Hensley v. Eckerhart,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. *See Murphy v. Int'l Union of Operating Engineers, Local 18,* 774 F.2d 114, 128 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986) (so noting). Although the *Murphy* court noted these factors may be helpful, it reiterated that the Sixth Circuit expressly rejects a "checklist approach to fee determinations." *Id. See Northcross v. Bd. Of Education of Memphis City Schools,* 611 F.2d 624, 642–43 (6th Cir.1979),

cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980) ("a check list of factors to consider does not lead to consistent results ... The number of hours of work will automatically reflect the 'time and labor involved', the 'novelty and difficulty of the question', and 'preclusion of other employment'.")

6. *Kelley v. Metropolitan County Bd. of Educ.,* 773 F.2d 677, 685 (6th Cir.1985), *cert. denied,* 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986) (construing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

tion of benefits. This request was denied by the court. On the matter of attorney's fees, the court reduced plaintiff's award by one half because of its failure to order reinstatement. The Circuit reversed both rulings. First, the court ruled that the district court was bound by the jury's determination and should have ordered reinstatement. On the attorney's fee issue, the defendant argued that although the suit involved one interrelated claim, namely the defendant's discrimination, the results achieved at trial (the split decision of court and jury) justified the reduction in fees. The Circuit disagreed:

> Since [plaintiff's] discrimination claim is not divisible into tidy units, we find that the jury verdict compels the conclusion that [plaintiff] prevailed overall.
>
> Moreover, *even if we were to agree with defendant's argument that a court may properly segregate out results in a single issue case such as this one,* since we have reversed the district court with respect to reinstatement, it follows that the court's decision with respect to attorney's fees must now be reversed. We are here granting reinstatement; plaintiff's remedy is now therefore whole. Her counsel's award should mirror this change.

*In re Lewis,* 845 F.2d at 632 (emphasis added). This quote strengthens the view that the determination of success in "common core of fact" cases should be done through the examination of the overall relief obtained in relation to the amount of hours reasonably expended. The Supreme Court apparently endorses this opinion. *See Hensley v. Eckerhart,* 461 U.S. at 435 at note 11, 103 S.Ct. at 1940 at note 11::

> We agree with the District Court's rejection of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may re-

cover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.

*Id.*

■ In the case at bar, as this court has noted above, there was no issue of fact that the plaintiffs were the prevailing party at the administrative level. As noted in this court's November 4, 1991 order:

> Because of the very real fiscal and emotional impact IDEA cases evoke, this court has detailed in length a conclusion which could simply be inferred from the barest of facts. In other words, the plaintiff commenced the administrative litigation and, by its conclusion, succeeded in having a majority of their requests granted. A conclusion that they prevailed by the prompting of counsel is indisputable. Thus the plaintiffs are entitled to reasonable attorney's fees and costs.

*Moore v. Crestwood Local School District,* No. 90 CV 1428, slip op. at 18 (N.D.Ohio Nov. 4, 1991) (order granting plaintiff's motion for summary judgment) [hereinafter "Summary Judgment Order"]. In the case at bar, the parties were unable to agree upon what educational placement, programs and services were appropriate for Kevin Moore. Frustrated with events, the plaintiffs consulted an attorney who requested alterations in several areas of concern. In such circumstances, one can only conclude that "plaintiff's claims for relief ... involve[d] a common core of facts ... [and was] based on related legal theories." *Hensley v. Eckerhart,* 461 U.S. at 435, 103 S.Ct. at 1940. Thus this court must agree with the Magistrate's conclusion that "the matters were intertwined and could not be viewed as a series of discrete claims." (Magistrate's Report at 9). As such, our concern turns to the overall result of the litigation. As noted in this court's summary judgment order, "the plaintiff[s] commenced this litigation and, by its conclusion succeeded in having a majority of their requests granted". Put more simply, on this quite personal and heartrending matter, the plaintiffs got

most of what they asked for. In the words of Justice Powell, this result is "excellent", and plaintiffs' attorney should therefore "recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. at 435, 103 S.Ct. at 1940.

With this established, we must now turn to the Magistrate's recommended calculation of plaintiff's counsel's fee. As noted in the introduction, this matter progressed at two distinct stages, the administrative level and the suit for fees in this court. The Magistrate recommended complete compensation for counsel's work at the administrative level; a total of 195.4 hours inclusive of the 72.5 hours spent "in court" at the administrative hearing. At the district court level, as the Magistrate correctly noted, plaintiff's counsel expended 161.8 hours. Of this time, 138.1 hours were billed at the $125.00 per hour rate, and 23.7 were billed at the $135.00 per hour rate. The crux of plaintiff's objection is the Magistrate's recommended limitation of the amount of hours properly billable.

In his report and recommendation, the Magistrate limited plaintiff's billable hours for time in district court to 5% of the hours billable at the administrative level. In so doing, the Magistrate relied upon *Coulter v. State of Tennessee*, 805 F.2d 146 (6th Cir.1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987). In *Coulter*, the court was confronted with the appeal of a district court's limitation on the fee award to a prevailing plaintiff's counsel in a Title VII suit. As the court noted:

> [t]he cases from this and other circuits uniformly hold that a lawyer should receive a fee for preparing and successfully litigating the attorney fee case after the original case is over, although in the private market place, lawyers do not usually charge and clients do not usually pay, for the time it takes a lawyers to calculate their fees.

*Coulter*, 805 F.2d at 151 (*citing In re Nucorp Energy, Inc.*, 764 F.2d 655, 660 (9th Cir.1985) *See also Weisenberger v. Huecker*, 593 F.2d 49, 54 (6th Cir.1979), *cert. denied*, 444 U.S. 880, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979) ("We conclude that implementation of Congressional policy requires the awarding of attorney's fees for time spent pursuing attorney's fees....") This practice, however, invites abuse by less than virtuous counsel:

> Although the time spent in preparing, presenting and trying attorney fee applications is compensable; some guidelines and limitations must be placed on the size of these fees. Otherwise the prospect of large fees later on may discourage early settlement of cases by rewarding protracted litigation of both the civil rights case and the attorney fee case.

> .    .    .    .    . .

> The legislative intent behind attorney fee statutes ... was to encourage lawyers to bring successful civil rights cases, not successful attorney fee cases.

*Coulter*, 805 F.2d at 151. For this reason, the circuit adopted the following formula to discourage excessive litigation of the attorney fee issue:

> In the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary. Such guidelines and limitations are necessary to insure that the compensation from the attorney fee case will not be out of proportion to the main case and encourage protracted litigation.

*Id.* On the basis of this precedent, the Magistrate recommended "an award to plaintiffs of 10.0 hours for the prosecution of their fee request. This is slightly more than 5% [of the hours expended in the main case], but the amount is rounded for the sake of arithmetic simplicity." (Magistrate's Report at 12)

The plaintiffs object to this recommendation arguing that the "Magistrate Judge erred in not distinguishing the facts of this case form *Coulter v. State of Tennessee* (sic)". (Plaintiffs' Objections at 2) Nevertheless, plaintiffs apparently and this court certainly acknowledge that *Coulter*'s guidelines are binding upon this court.

Thus, the question becomes not whether this case is distinguishable from *Coulter*, for it clearly is, but rather whether this case presents the "unusual circumstances" contemplated by the Sixth Circuit which justify departure from the *Coulter* guidelines. *See, e.g., Americans United v. School District of Grand Rapids*, 717 F.Supp. 488 (W.D.Mich.1989) This court is of the opinion that this case does present these "unusual circumstances" for two reasons.

■ First, as noted above, the instant case was initially prosecuted at the administrative level, entirely removed from this court. The plaintiffs brought this action in federal court to seek award of attorney's fees as prevailing parties. This fact alone makes this case rather anomalous. As is typical of most attorney fee petitions filed in this court, *Coulter* involved a civil rights plaintiff. In *Coulter*, as is standard, the plaintiff filed her complaint in the U.S. district court. That court rendered a verdict favorable to plaintiff on her sex discrimination claim and subsequently reviewed the plaintiff's counsel's fee petition, an admittedly simple procedure. *Coulter* involved a Title VII plaintiff. In addition to Title VII, this court believes it may fairly conclude that the fee-shifting provisions of 42 U.S.C. § 1988 permit the majority of fee petitions in federal court.[7] These cases usually follow the path typified by *Coulter;* to wit, plaintiffs bring an action in federal court to enforce the substantive provisions of a civil rights statute and, if they prevail, subsequently petition the court for attorney's fees. Indeed, fees may only be sought under § 1988 if the plaintiff brought an action in federal court to enforce the provisions of a civil rights statute enumerated therein. Section 1988 of Title 42, United States Code provides, in pertinent part, the following:

> In any action or proceeding *to enforce a provision* of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title,

title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b) (emphasis added). As the language of the statute suggests, the Supreme Court has held that federal courts may award attorney's fees under § 1988 only in an action to enforce one of the civil rights laws specified in the statute, and *not* in a separate action brought solely to recover such fees. *North Carolina Dept. of Transportation v. Crest Street Community Council, Inc.*, 479 U.S. 6, 14, 107 S.Ct. 336, 341, 93 L.Ed.2d 188 (1986) (O'Connor, J.,) ("It is entirely reasonable to limit the award of attorney's fees to those parties who, in order to obtain relief, found it necessary to file a complaint in court.") In contrast, IDEA permits a plaintiff prevailing at the administrative level to bring a subsequent suit in federal court for recovery of attorney's fees. *Eggers v. Bullitt County School Dist.*, 854 F.2d 892 (6th Cir.1988) When one applies the *Coulter* guidelines, this contrast has a dramatic impact. This court believes that this impact was not and likely could not be contemplated by the *Coulter* court due to a rather remarkable convergence of events.

As noted above, *Coulter* limits billable fee petition hours to 3–5% of the hours expended by the prevailing party's counsel in the main case. The final decision in *Coulter*, denying rehearing, was issued *after* the Supreme Court's decision in *Crest Street*, which prohibited the filing of separate actions for fees under § 1988. Thus, *Coulter* was decided when a great deal of fee petitions could not be pursued in a separate federal lawsuit. In addition, *Coulter* was decided a mere three days after the first reported Circuit decision holding that the newly enacted 20 U.S.C. § 1415(e)(4)(B) permitted recovery of attorney's fees.[8] *See Fontenot v. Louisiana*

---

7. As the Sixth Circuit noted in *Coulter*, "the legislative history of § 1988", which "was patterned in part on Title VII's attorney fee provision" is "indicative of congressional intent rela-

tive to § 2000e–5(k)." *Coulter*, 805 F.2d at 149 n. 4.

8. In *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Supreme Court

*Bd. of Elementary and Secondary Educ.,* 805 F.2d 1222 (5th Cir.1986). Indeed, no reference to IDEA or its predecessor, the Education of the Handicapped Act, is made in the length appendix to the *Coulter* opinion which lists "Federal Statutes Authorizing the Award of Attorney Fees". *Coulter,* 805 F.2d at 152–155. Finally, *Coulter* was decided two years before the Sixth Circuit ruled that plaintiffs prevailing at the administrative level could bring separate federal suits for attorney's fees. *Cf. Coulter,* 805 F.2d 146; *Eggers,* 854 F.2d 892. In light of these facts, it seems clear that the *Coulter* court did not contemplate a separate federal action such as the case at bar. The language used by the *Coulter* court suggests that it contemplated application of its guidelines in typical fee petition actions:

> [A] lawyer should receive a fee for preparing and successfully litigating the attorney fee case after the original case is over, although in the private market place, lawyers do not usually charge, and clients do not usually pay, for the time it takes lawyers to calculate their fees.

*Coulter,* 805 F.2d at 151. The instant case, of course, involved much more than the mere calculation of fees.

The plaintiffs herein filed suit, pursuant to *Eggers, supra,* and litigated the issue of who prevailed, a question no doubt raised in typical fee petitions, but usually much more easily resolved there due to the fact that the judge is more intimately familiar with the consequences of the main case. Indeed, it's hard to conceive how plaintiffs could file and effectively pursue any action in U.S. district court which would not, by necessity, consume much more than 3–5% of the hours spent at the administrative level. Consequently, this court is of the

opinion that when IDEA plaintiffs prevail at the administrative level and by necessity must pursue a separate fee action in federal court, this second lawsuit is itself an "unusual circumstance" permitting departure from the *Coulter* guidelines.

In addition, this court believes the nature of the litigation in the instant matter was sufficiently "unusual" to depart from the *Coulter* guidelines. In this case, plaintiffs were forced to file this suit after defendants refused to pay counsel's fees. By their refusal, defendants took the less than moderate position that plaintiffs had not prevailed at the administrative level.[9] Regardless of any dispute as to the extent of plaintiffs' success, it was and is quite clear that plaintiffs were the prevailing party. As this court noted in its summary judgment order, the conclusion that plaintiffs prevailed "could simply be inferred from the barest of facts. In other words, the plaintiff[s] commenced the administrative litigation and, by its conclusion, succeeded in having a majority of their requests granted." *Moore v. Crestwood Local School Dist.,* No. 90 CV 1428, slip op. at 18 (N.D.Ohio Nov. 4, 1991) (order granting plaintiffs' motion for summary judgment). Here, plaintiffs were forced to litigate the prevailing party issue and should not be penalized for pursuing their rights.

Defendant's litigation tactics were not limited to disputing who was the prevailing administrative litigant. Defendant repeatedly rebuffed plaintiffs' offers of settlement. (Tr. at 38–40). In addition, they filed what can only be described as an insincere counterclaim for fees and cost. Section 1415(e)(4)(B) specifically provides attorney's fees "to the *parents or guard-*

determined that attorney's fees were not recoverable under the Education of Handicapped Children's Act, 20 U.S.C. § 1400 *et seq.,* the less politically correct title of IDEA prior to its 1990 amendment to the Individuals with Disabilities Education Act. *See* Education of the Handicapped Act Amendments of 1990, Pub.L. 101–476, § 901(a)(1), 104 Stat. 1103, 1142 (1990). On August 5, 1986, Congress passed the Handicapped Children's Protection Act, superseding by statute this portion of the *Smith* ruling. This

1986 amendment is codified in the section at issue in this case, 20 U.S.C. § 1415(e)(4)(B).

9. Defendants did so despite the fact that "it [was] undisputed that Plaintiffs obtained the ... services, however, it is also undisputed that Defendant offered to pay any and all attorney fees incurred by Plaintiffs through and including the March 23, 1990 IEP conference." (Defendant's Reply to Plaintiffs' Motion for Summary Judgment at 4).

*ian* of a handicapped child or youth *who is the prevailing party.*" 20 U.S.C. § 1415(e)(4)(B) (emphasis added). Indeed, this court was able to dispose of defendant's counterclaim, by footnote, in the following manner:

> *Hiller*, in part, suggested that where a trial court finds a plaintiff has brought an IDEA action in bad faith, the district court had inherent power to award attorney's fees to the prevailing defendant. *Hiller* [by Hiller v. Board of Education of Brunswick Central School Dist.], 743 F.Supp. [958] at 976 [ (N.D.N.Y.1990)]. This suggestion forms the basis of the defendant's counterclaim against the plaintiff[s]. Like the court in *Hiller*, this court in *Hiller*, this court may promptly dispose of this claim. The hearing officer reported, as a finding of fact, that "[b]oth the Petitioners [plaintiffs] and Respondent [defendant], through its employees, have acted in good faith in adjusting the IEP of Kevin Moore throughout the 1989–1990 school year".

(Summary Judgment Order at 16 n. 10) Nevertheless, the filing of this claim required responsive action on the part of plaintiffs, including research and filing of a motion to dismiss that claim and addressing it in their motion for summary judgment.

Finally, substantial costs were incurred when the Defendant filed an untimely appeal with the United States Court of Appeal for the Sixth Circuit. By order of May 21, 1992, the Circuit dismissed this appeal, *sua sponte*. However, as was noted in their objections to the Magistrate's Report, "[p]laintiffs could not rely on such action ... and were forced to incur attorney fees and copying and postage expense for preparing a brief in accordance with the appellate rules of court." (Plaintiffs' Objections at 3–4)

As these facts make clear, this litigation was driven by the action of defendant and its counsel. What could have, and should have been a simple fee petition, was, contrary to the Supreme Court's admonition, turned into "a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

It is this court's conclusion that when a plaintiff prevailing at the administrative level is both permitted by statute and case-law, as is the case here, to bring a second lawsuit for fees, and is forced by a defendant's actions to respond to "major litigation", that plaintiff is entitled to complete departure from the *Coulter* guidelines and should recover a reasonable fee for all hours reasonably expended in the attorney's fee case. As plaintiffs cogently express, application of the *Coulter* guidelines in cases such as this:

> will have a chilling effect on parents of handicapped children and their willingness to engage counsel to pursue Due Process complaints. It sends a clear signal to school districts that protracted litigation in the federal courts will work to the detriment of Plaintiffs and their counsel, because there is an automatic ceiling on how much their counsel will recoup for attorney's fees and costs. Any additional amounts, especially if the issue become protracted, as they have been here, will result in a hardship on the Plaintiffs and their counsel, and will discourage them from proceeding with this type of action. The Moores' case against Crestwood for attorney's fees is a clear example of how a school district can protract litigation to the detriment of Plaintiffs.

(Plaintiff's Objections at 5) Such a result not only flies in the face of the obvious intent of § 1415(e)(4)(B), but also results in manifest injustice.

Accordingly, plaintiffs are hereby awarded attorney's fees for the 168.1 hours expended at the district court and appellate level. Of these hours, 138.1 are properly billed at the rate of $125 per hour. The 23.7 hours remaining are appropriately billed at the rate of $135 per hour. Thus, the total award for fees at the district court level is $20,462. In addition, of course, plaintiffs are awarded attorney's fees for 195.4 hours of time expended at the administrative level, inclusive of the 72.5 hours spent "in court" at the administrative hearing. The "in court" time is properly billed at $150 per hour; the out-of-court time is billed at $85 per hour. Plain-

tiffs are therefore entitled to $21,321.50 for legal fees incurred at the administrative level. Plaintiffs are hereby awarded $42,-783.50 for attorney's fees. This court's construction of *Coulter, supra,* applies with equal force to the Magistrate's reduction of chargeable out-of-pocket expenses for· incidental items (telefacsimile costs, telephone and copier expenses). Accordingly, plaintiffs are awarded $1,537.27 for these additional costs.

This court is in complete agreement with the remainder of the Magistrate's recommendation relating to expert witness fees. That portion of the magistrate's report is incorporated by reference and adopted by this court.

IT IS SO ORDERED.