**Enorick HALL, a minor, by his next of friend, Janise HALL, Plaintiff,**

v.

**The DETROIT PUBLIC SCHOOLS, Defendant.**

No. 92–CV–71400–DT.

United States District Court,. E.D. Michigan, S.D.

June 10, 1993.

Marsha Lynne Tuck, Elsa M. Shartsis, Abrams & Tuck, Farmington Hills, MI, for plaintiff.

Jeffrey R. McLeod, Detroit, MI, for defendant.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

The controversy between the parties to this lawsuit arose out of their dispute over whether the Plaintiff, Enorick Hall, was entitled to enroll in the Detroit, Michigan public school system as a special education student because of his alleged learning disability.

On March 13, 1992, Janise Hall[1] filed a Complaint with this Court in which she contended that the Defendant, The Detroit Public Schools, had, *inter alia,* wrongfully deprived her son of "a free, appropriate public education [and subjected him to] multiple and long-term suspensions during the 1991/1992 school year in violation of the [Individuals With Disabilities Education Act, formerly known as the Education of the Handicapped Act, 20 U.S.C. §§ 1400–1485 (1988 & Supp.1991)]." (Complaint at 1.) As the result of an agreement between the par-

---

1. At all times that are relevant to this Order, Janise Hall acted in her capacity as the Next Friend of her son, Enorick Hall, who was born on September 17, 1978.

ties on March 26, 1992, the Court directed the Defendant, through its Individualized Educational Program Committee (IEPC), to complete an evaluation of Enorick Hall on or before April 2, 1992. (Order, April 10, 1992.)

On December 14, 1992, the parties reached an accord on "[a]ll claims included in the Complaint, with the exception of [Enorick Hall's] demand for attorneys' fees ....]," and consented to the entry of a partial dismissal of this lawsuit. (Stipulation and Order for Partial Dismissal, December 14, 1992, at 1.)[2]

Four days later, Janise Hall filed an "Application for Attorneys' Fees Pursuant to the Handicapped Children's Protection Act of 1986," contending that her son is the prevailing party in this litigation, and as such, his attorneys are entitled to receive the sum of $9,829.90 for the legal services that were rendered by them in this legal proceeding. The Defendant disagreed and filed papers in opposition to the request.

For the reasons that have been set forth below, this Court will grant in part, and deny in part, the application of Enorick Hall for attorneys' fees.

### I.

Enorick Hall is a fourteen year old resident of Detroit, Michigan, who was a seventh grade student in one of Detroit's public schools during the 1991–1992 academic year. (Complaint at 3, ¶ 7.) His mother complains that, although her son had been provided special education services in earlier years, he was not been permitted by the Defendant to enroll as a special education student in the 1991–1992 school year. *Id.* at 3, ¶ 8.

In an effort to obtain a continuation of these services for her son, Ms. Hall signed a parental consent form in November 1991 which permitted the Defendant to conduct a series of psychological tests of him as a condition for receiving special education within the school system. *Id.* at 3, ¶ 10. The testing of Enorick Hall began on January 2, 1992. On January 23, 1992. Janise Hall "was informed that her son did not qualify as a learning disabled student ...." (Complaint at 4, ¶ 15.) Five days later (January 28, 1992), Ms. Tamara Watson, Assistant Principal of the Cadillac School where Enorick Hall had been enrolled, expressed some concerns regarding his "social adjustment difficulties and numerous short term exclusions." (Response at Exhibit 1, p. 1.) On the same day, Ms. Hall "at a cost to herself of $450 ... arranged for [a] private, independent comprehensive educational evaluation to be administered to her son by the Michigan Dyslexia Institute of Detroit, Michigan. That evaluation conclude[d] that [Enorick Hall] is a student with a handicapping condition." (Complaint at 5, ¶ 16.)[3] On the following day, he was evaluated by Mr. Leslie Schultz, a teacher consultant, who concluded that his test results did not indicate any learning disability. (Response at Exhibit 1, p. 2.)

2. In their stipulation for the entry of an order of a partial dismissal of the instant lawsuit, the parties agreed that Enorick Hall would be treated as a learning disabled student who is entitled to the following special education assistance opportunities:

  1. An appropriate mix of regular education classes and resource room classes;
  2. Teaching and testing methods appropriate to [Enorick Hall's] status as a handicapped student;
  3. School management methods appropriate to [his] status as a handicapped student;
  4. Tutoring for two (2) hours per week as now provided by Mary Yoches of the Michigan Dyslexia Institute or other similarly qualified specialist.... The tutoring was an agreement between the parties as a form of compensatory education, and shall terminate at the end of one (1) year from the date of this agreement. [The Defendant] shall contract directly with the Michigan Dyslexia Institute and shall bear the costs of tutoring.
  5. School social work services including strategies in conflict resolution and behavior management pursuant to the [Individualized Educational Program] I.E.P. of June 9, 1992;
  6. Transportation to and from school;
  7. A behavior management plan, if the teaching staff advises this and after consultation with Janise Hall; and pursuant to the I.E.P.;
  8. At least one time per year, administration of the Brigance Comprehensive Inventory of Basic Skills Test, to determine progress and current achievement levels.

(Settlement Agreement, December 14, 1992, at 2–3.)

3. Pursuant to an agreement reached between the parties, the Defendant subsequently reimbursed Janise Hall for the monies that were advanced by her to the Michigan Dyslexia Institute. (*See* Order, April 10, 1992, at 2.)

During the first week of February 1992, the Defendant, through its Multidisciplinary Evaluation Team (MET), met but failed to reach an agreement as to Enorick Hall's scholastic status. Nevertheless, the testing continued without any date having been set for an IEPC to meet and evaluate the results thereof. *Id.* at 3.

On February 19, 1992, a social worker interviewed Enorick Hall and concluded that he did not qualify as an emotionally impaired student who would be entitled to special services in the Detroit public school system. On February 25, 1992, Janise Hall, concerned that her son had not been allowed to participate in any classroom activities since January 27, 1992, wrote a letter to the Defendant, in which she requested that (1) her son be permitted to return to school, and (2) a meeting of the IEPC be convened "the same week" in order to evaluate his emotional condition. (Complaint at Exhibit A.)

On March 5, 1992, the members of the MET received a report from the Michigan Dyslexic Institute which confirmed Enorick Hall's dyslexia. During their second meeting in March 1992, the MET concluded that Enorick Hall, though not eligible for enrollment as a learning disabled student, should undergo a psychiatric evaluation. The examining psychiatrist opined that Enorick Hall was not emotionally impaired. (Response at Exhibit 1, p. 3.)

Having received no response to her letter of February 25, 1992, Ms. Hall initiated this lawsuit on March 13, 1992 in an effort to obtain some form of special educational relief for her son.

## II.

Enorick Hall submits that, as a prevailing party, he is entitled to recover attorneys' fees, all of which were reasonable and necessary. After the filing of this lawsuit, he was "readmitted to school, (admirably) evaluated at [the] Defendant's expense, declared handicapped and eligible for special education services, placed in a specially tailored program, and among other items, provided compensatory education by paying for a private tutor." (Reply at 7.)

The Defendant, while acknowledging that attorneys' fees may be awarded to a prevailing party under the Individuals with Disabilities Education Act, contends that Enorick Hall's position is incorrect. More specifically, the Defendant maintains that this petition should be granted only if the Court determines that (1) the petitioner was entitled to a special education program following the completion of appropriate testing and evaluations by authorized school personnel, and (2) an unreasonable delay in providing the requisite services or a refusal to furnish the minimal statutory educational needs has been established. It is the Defendant's position that neither of these two elements has been established in this case. Finally, the Defendant argues that the requested fees are unreasonable inasmuch as the itemized time sheet contains several duplicate entries.

## III.

The Individuals with Disabilities Education Act requires those states, which seek to qualify for federal funds, to develop policies that will assure a free and appropriate education for all disabled children within the public school system. 20 U.S.C. § 1412; *Honig v. Doe,* 484 U.S. 305, 310, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988). This Act also requires the participating states to impose procedural safeguards for the general welfare of the children and their parents who seek to obtain the guaranteed services, including an impartial due process hearing as well as administrative and judicial reviews. 20 U.S.C. § 1415.[4]

In 1986, the Act was amended by Congress to permit the recovery of attorneys' fees. Handicapped Children's Protec-

---

4. The statute requires local education officials, teachers, and parents to develop a written, individualized educational program [IEP] for each child that details the level of educational performance of the child as well as goals and services to be provided by the school system.... If the parents disagree with the program, they may request a due process hearing by the appropriate administrative agency.... The agency's findings may be appealed to district court, which conducts a new review of the facts....
*Krichinsky v. Knox County Schools,* 963 F.2d 847, 849 (6th Cir.1992) (citations omitted).

tion Act, 20 U.S.C. §§ 1415(e)(4)(B)–(e)(4)(G). The amendment reads, in relevant part, that "[i]n any action or proceeding brought under this subsection the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). In order to recover attorneys' fees, some relief on the merits, or comparable relief, must be obtained at the administrative level or through an enforceable judgment, consent decree, or settlement. *See Farrar v. Hobby,* — U.S. —, —, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992); *Eggers v. Bullitt County School District,* 854 F.2d 892 (6th Cir.1988) (court may award fees to prevailing party at administrative as well as judicial level); *Shelly C. v. Venus Independent School Dist.,* 878 F.2d 862, 864 (5th Cir.1989) (attorney's fees may be awarded when settlement reached before due process hearing), *cert. denied,* 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990); *Mitten v. Muscogee County School Dist.,* 877 F.2d 932, 935 (11th Cir.1989) (recovery of attorney's fees at administrative level permissible), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1117, 107 L.Ed.2d 1024 (1990); *Fischer v. Rochester Community Schools,* 780 F.Supp. 1142, 1149 (E.D.Mich. 1991) (fees must be available to parents who prevail at administrative hearing).

■ The focus of this inquiry is whether the relief obtained by the petitioning party alters the legal relationship of the parties. *Krichinsky v. Knox County Schools,* 963 F.2d 847, 849–50 (6th Cir.1992); *Domegan v. Ponte,* 972 F.2d 401, 406–9 (1st Cir.1992). This is measured by examining the prior relationship that gave rise to the alleged wrongdoing and determining whether the relief actually changed that relationship "in a manner which Congress sought to promote in the fee statute." *Domegan,* 972 F.2d at 416. As the Sixth Circuit Court of Appeals (Sixth Circuit) recently elaborated on 20 U.S.C. § 1415(e)(4)(B):

> The legislative history ... indicates that the term "prevailing party" in the amendment has the same meaning as similar terms in other legislation.... By analogy, under 42 U.S.C. § 1988, a prevailing party

is one who " 'succeeds on any significant issue which achieves some of the benefits plaintiffs sought in bringing the suit' ".... The definition of a prevailing party is " 'a generous formulation that brings the plaintiff only across the statutory threshold.' " ... The Supreme Court stated that, at a minimum, to be considered a prevailing party for purposes of fee awards, "*a plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.*"

*Krichinsky,* 963 F.2d at 849–50 (citations omitted) (emphasis added).

### A

■ A comparison of the relief that had been sought by Enorick Hall with that which was ultimately obtained by him as a result of the legal process establishes a basis for recovery of attorneys' fees in this case. He, through his lawsuit, asked for and received (1) a meeting with the IEPC, (2) readmission into the Detroit public school system as a full-time student in the special education program, and (3) reimbursement for the costs that were expended by his mother for an independent evaluation by the Michigan Dyslexia Institute. (Complaint at 12–13; Order, April 10, 1992.) On the other hand, the Defendant submits that (1) the lack of a formal adjudication prevents him from claiming to be a "prevailing party," and (2) an IEPC meeting and evaluation would have been conducted with or without the pressure of the instant lawsuit.

Under the federal statute and the counterpart state laws, the IEPC is obliged to meet in order to determine whether a child has a disabling condition that will require the utilization of a special education program or service, and if so, the need, if any, for the establishment of an appropriate program. 34 CFR §§ 300.340–300.349 (1992); 1987 AACS, R 340.1721(e). If the parent(s) or the school district disagree with a decision by the IEPC, the aggrieved party has a right to request a due process hearing before an impartial administrative tribunal. 20 U.S.C. § 1415(b)(2); 1987 AACS, R 340.1724.

Under Michigan law,

The time from referral or from receipt of parental consent to an initial evaluation to the completion of the individualized educational program or the determination of ineligibility shall not exceed 30 school days. This time line begins upon receipt of the signed parental consent by the public agency requesting it and may be extended if agreed to by the parent and public agency.

1987 AACS, R 340.1721c.[5] 1987 AACS, R 340.1721e reinforces this thirty day time frame by providing that "[t]he participants [in the individualized education planning committee meeting] shall determine if the student is eligible for special education programs or services, or both.... In either event, the time line specified in R 340.-1721c(2) shall apply."

The record reveals that the Defendant failed to comply with 1987 AACS, R 340.-1721c and R 340.1721e. As of the date when this action was filed, Enorick Hall had not been granted his right to an IEPC meeting within thirty days of his mother's initial request for an evaluation. In fact, the Defendant did not schedule a meeting of the IEPC until April 2, 1992—nearly three weeks after the commencement of this lawsuit. Additional meetings were subsequently held in May and June of 1992. (Response at Exhibit 2.)

In the absence of an agreement between the parties to extend the deadline, the completion of the evaluation or a determination of ineligibility should have been made on or before the second week in February 1992. None of the evidence submitted indicates that Janise Hall ever consented to extend the deadline. Rather, her February 25, 1992 letter requesting an IEPC meeting clearly suggests the contrary. There is nothing in the record, other than a general denial, that would indicate if the Defendant ever responded to this request for an immediate meeting of the IEPC. (Answer at 4, ¶ 19). Furthermore, the Defendant does not allege, and the record does not suggest, that Janise Hall or her son received any report by, or

conclusions of, the IEPC prior to the commencement of this lawsuit.

The Defendant has failed to recite any legitimate excuse for its delinquency. Despite the arguments by the Defendant, the commencement of the litigation did change the legal relationship between the parties in that Enorick Hall was able to successfully obtain his right to a timely IEPC meeting.

The Defendant cites *Angela L. v. Pasadena Independent School District*, 918 F.2d 1188 (5th Cir.1990), in support of its contention that there can be no alteration of the legal relationship between the parties in the absence of a denial of the requested services. In *Angela L.*, the Fifth Circuit Court of Appeals affirmed an award of attorney's fees by the district court, finding that the intervention of an attorney prompted the school district to provide special education services to the student. Initially, the school district refused to provide special education services to Angela L., a child with a disabling condition, after two reviews had been conducted. The parents sought legal advice and pursued a due process hearing. Prior to the hearing, the parties entered into a settlement agreement in which the youngster received the services that she had requested. *Angela L.*, 918 F.2d at 1191.

*Angela L.* and the instant case are distinguishable in that the school officials in *Angela L.* had articulated a determination of ineligibility. *Id.* at 1190–91, 1194. The Defendant correctly notes that Enorick Hall has not received a formal denial of special education assistance from which an appeal could be made. Yet, it was the Defendant's failure, refusal, or neglect to convene an IEPC meeting relating to the eligibility of this youngster for special educational training that prompted the filing of this lawsuit. This, in turn, prevented his mother from initiating the procedural safeguards of the Act. It is clear that the intervention of the attorneys in this case, as in *Angela L.*, induced the school officials to convene a meeting of the IEPC and make a determination from which Janise

---

**5.** Federal law requires an IEPC meeting to be held within thirty days of a determination of a handicapped condition. 34 CFR § 300.343(c) (1992). However, 20 U.S.C. §§ 1412 and 1413 permit the participating states to develop their own plan and policies. Evidently, Michigan determined that a more rigid time frame best suited its educational program.

Hall could exercise her administrative remedies. The Defendant cannot foreclose legal remedies to an aggrieved party by failing to comply with a statutory mandate.

Furthermore, although the Defendant's contention that an IEPC meeting would have been held even in the absence of any pressure from the pending lawsuit may be technically correct, it is misleading. A meeting of the IEPC is mandated by law. 34 CFR 300.340–300.349 (1992); 1987 AACS, R 340.-1721e; 20 U.S.C. § 1415; Mich.Comp.Laws Ann. §§ 380.1701, 380.1711, 380.1751 (West 1988). Hence, the Defendant was obligated to convene an IEPC meeting upon the request of a party seeking special education services.

This argument does not alter the fact that the Defendant violated the law of Michigan for at least three months when it failed or neglected to establish a meeting of the IEPC or seek an extension of the thirty day time frame. The administrative remedies of the Act are designed to guarantee that a child with a disabling condition receives an appropriate education. 20 U.S.C. § 1415(a). These procedural safeguards would be meaningless if a school district failed, refused, or neglected to make any determination as to the eligibility or ineligibility of a student.

Whenever a school district delays its final determination without justification, the affected youngster suffers. In this case, Enorick Hall had been out of school since January 27, 1992 as the result of repeated disciplinary suspensions. He had not been allowed to return to the classroom despite the repeated but futile efforts by his mother. Furthermore, nothing in the record suggests that Janise Hall had agreed to her son's prolonged absence from a classroom until April 10, 1992.[6] 20 U.S.C. § 1415(e) specifically prohibits a suspension exceeding ten days in the absence of a threat to the safety of others or the unilateral alteration of a child's placement. *See Honig,* 484 U.S. at 305, 108 S.Ct. at 592. The Defendant has failed to provide this Court with a legitimate reason, or evidence of a threat to his classmates or teachers, which would justify Enorick Hall's extended involuntary or mandated absence from school.

The entire course of conduct by the Defendant contravenes the Congressional mandate that all children with disabling conditions receive a free and appropriate education. A lawsuit that has been instituted by an aggrieved party in an effort to insure compliance by a school district with the Act and its implementing laws is within the scope of 20 U.S.C. § 1415(e)(4)(B). Here, the demand for injunctive relief in the Complaint materially contributed to the decision by the Defendant to schedule an IEPC meeting. *See Wheeler v. Towanda Area School Dist.,* 950 F.2d 128, 132 (3rd Cir.1991) (causal connection between litigation and relief obtained can be established through a catalyst theory.) Inasmuch as Enorick Hall sought and obtained the enforcement of the IEPC provisions through his lawsuit, this Court determines that he was a "prevailing party."

**B**

A district court has great discretion in determining the amount of attorneys' fees to award to a prevailing party under the Individuals with Disabilities Act. *Fenneman v. Gorham,* 802 F.Supp. 542, 548 (D.Me. 1992). However, an award must be reasonable and should reflect the success of the prevailing party. *Id.; Hensley v. Eckerhart,* 461 U.S. 424, 434, 436, 103 S.Ct. 1933, 1939, 1941, 76 L.Ed.2d 40 (1983). The applicable law regarding the calculation of a reasonable fee under the Act is analogous to the law relating to fee awards in other substantive areas of law, particularly in civil rights cases under 42 U.S.C. § 1988. *See Angela L.,* 918 F.2d at 1197. A party who prevails on any significant issue is entitled to fees for that issue even if it is not the primary matter to be resolved in the litigation. *Texas State Teachers Ass'n v. Garland Indep. School Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). Again, significant relief

---

**6.** On February 17, 1992, Janise Hall appears to have consented to delay her son's placement in school until the completion of some test results. (Complaint at Exhibit B.) However, her February 25, 1992 letter clearly indicates that she revoked her earlier consent, making any further delay in his placement unacceptable to her. *Id.* at Exhibit A.

is the applicable standard. *Mitten*, 877 F.2d at 936.

■ In deriving the amount of the fee award, a court should multiply a reasonable hourly rate by the number of reasonable hours that are necessary for the counsel for the aggrieved party to perform the requisite legal services. 20 U.S.C. § 1415(e)(4)(C) (fees must be based on prevailing rate in community); *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939; *Angela L.,* 918 F.2d at 1197; *Moore v. Crestwood Local School Dist.,* 804 F.Supp. 960, 965 (N.D.Ohio 1992). The figure may be adjusted on the basis of several factors, including the time and labor required, the prevailing fee, the experience of the attorney, and the results obtained. *Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3; *Angela L.,* 918 F.2d at 1197. In addition, the Act permits a reduction of the fee award if a court finds that (1) "the parent or guardian ... unreasonably protracted the final resolution of the controversy," (2) "the amount ... unreasonably exceeds the hourly rate prevailing in the community," or (3) "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(e)(4)(F).

■ Here, Enorick Hall's legal efforts met with complete success. Moreover, the attendance by both of Enorick Hall's attorneys at the IEPC meetings should be compensated because their presence resulted from an agreement between the parties in an effort to resolve the Motion for Preliminary Injunction. (Order, April 10, 1992 at 2.) Although the Defendant ultimately adopted a majority of the recommendations made by the IEPC, the efforts by the attorneys for Enorick Hall to bring about a settlement are properly compensable in that they succeeded in securing the additional benefit of tutoring for two hours per week by the Michigan Dyslexic Institute over a period of one year at the Defendant's expense for their client. Therefore, in determining an appropriate award of attorneys' fees in this case, the Court believes that the legal services rendered by his counsel in this case were reasonable and necessary, subject to the few exceptions noted below.

This Court does agree with the Defendant's contention that some of the proffered entries are duplicative and excessive given the nature of the case and the expertise of each attorney. As an example, both attorneys attended a conference with Janise Hall on March 11, 1992. (Marsha Lynn Tuck and Elsa M. Shartsis Aff. at 2.) Under the circumstances of this case, this Court does not believe that (1) both counsel should be compensated for their joint meeting with Ms. Hall on March 11, 1992, (2) each attorney should recover fees for the time that they spent in conferring with each other on March 16, 1992,[7] and (3) the nature of this case required two attorneys to review the record in order to prepare for and attend a preliminary injunction hearing before this Court on March 26, 1992 or to attend a settlement conference on November 20, 1992. *Id.* at 2–3. Accordingly, the Court will reduce the number of allowable billing hours by eight and one quarter (8.25) hours.[8]

---

7. The Court notes that on March 13, 1992, a single billing entry was made for a conference in which both of Enorick Hall's attorneys were present. (*See* Marsha Lynn Tuck and Elsa M. Shartsis Aff. at 2.)

8. The following represents the exact deductions made by this Court:

| | | |
|---|---|---|
| 3/11/92 | EMS/Conference with Client and Atty Tuck | 1.25 |
| 3/16/92 | EMS/Conference with Atty Tuck | .50 |
| 3/25/92 | EMS/Conference with Atty Tuck re records and hearing; reviewed records for hearing | 2.00 |
| 3/26/92 | EMS/Court hearing on Order to Show Cause; Conference with client, Atty McLeod and Judge Cook | 2.50 |
| 11/20/92 | MLT/attend settlement meeting | 2.00 |
| | TOTAL REDUCTION | 8.25 |

With this reduction, the Court determines that 64.03 represents the number of hours reasonably spent by the attorneys for Enorick Hall on this case. Moreover, this Court concludes that the significant relief that they were able to obtain for their client justifies the hours expended by them. Given that the Defendant does not challenge the reasonableness of an hourly rate of $125, (Response at 2, ¶ 11), the Court determines that the total fee award shall be eight thousand, one hundred and seventy-five dollars and sixty-five cents ($8175.65).[9]

Accordingly, the Court grants in part Enorick Hall's application for attorneys' fees.

IT IS SO ORDERED.

9. The amount of the award will be calculated as follows:

|  | | |
|---|---|---|
| Fee: | 64.03 hours × $125.00 = | 8003.75 |
| Costs: | | 171.90 |
|  | TOTAL AWARD | $8175.65 |