ANGELA L. b/n/f Mrs. Zeta L., Plaintiff–Appellee,

v.

PASADENA INDEPENDENT SCHOOL DISTRICT, Defendant–Appellant.

No. 90–2072.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1990.

Donald G. Henlsee, William M. Buechler, Austin, Tex., for defendant-appellant.

Beatrice Mladenka–Fowler, Houston, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Perhaps the fiercest legal battles emerge not from knotty questions of a plaintiff's right to justice, but rather from comparatively trivial questions of an attorney's right to compensation. When needlessly protracted, these battles squander precious judicial time and resources. In the instant case, the Pasadena Independent School District vehemently challenges the district court's award of attorney's fees under the Handicapped Children's Protection Act of 1986 to the parents of a speech-impaired student. Unable to find that the district court committed reversible error, this Court affirms the award of attorney's fees and remands for calculation of the amount of fees that would be reasonable for this appeal.

## I. FACTS AND PROCEDURAL HISTORY

During the 1987–88 school year, Angela L. ("Angela") attended first grade at Burnett Elementary School in the Pasadena Independent School District. After she encountered difficulty mastering her subjects, her teacher recommended that Angela receive special educational services. The school district's Admission Review and Dismissal Committee assessed Angela for disabilities. The committee found Angela eligible for speech therapy services, but concluded that she suffered no legally "handicapping" conditions. Accordingly, the committee refused to permit Angela to participate in any special educational services other than speech therapy. Angela, continuing in the regular education program, subsequently failed all of her courses and was retained in the first grade.

In January 1988, Angela's parents requested an independent assessment of their daughter's abilities from the Meyer Center for Development Pediatrics in Houston, Texas. The Meyer Center determined that Angela was mildly retarded and required special educational services. Armed with this information, the parents sought a sec-

ond Admission and Dismissal Committee review. The parents, contending that Angela's mental retardation qualified as a handicapping condition, requested that their daughter receive individualized instruction and special therapy. The school district granted the parents a second review, but again concluded that Angela's condition did not justify special educational services.

Frustrated with their inability to obtain specialized services for their daughter, Angela's parents engaged legal counsel. The attorney reviewed Angela's condition and then filed the parents' request for a due process hearing before the Texas Education Agency. The state agency appointed a hearing officer and scheduled a date for the due process hearing. Meanwhile, the hearing officer conducted a pre-hearing conference in which the parties expressed their views. In this conference, the parents' attorney maintained that Angela was entitled to the following educational services from the school district: individualized instruction, a special curriculum based upon Angela's pace and ability, continued speech therapy, and occupational therapy. Subsequently, the parties entered into a settlement agreement negotiated by counsel for both sides, and the parents dismissed their request for a due process hearing. The school district in the settlement granted almost all of the parents' requested relief, with the exception that the school district declined to classify Angela as mentally retarded. Specifically, the school district agreed to the following terms:

(1) At the option of the parents, the Petitioner [Angela] will receive the modified curriculum program in a fixed-wall classroom at Stuchbury Elementary School, the modified curriculum program in an open classroom concept room with special assistance through the Pasadena Independent School District Chapter I reading program at Burnett Elementary School, or the modified curriculum program in a fixed-wall classroom with special assistance through the Pasadena Independent School District Chapter I read-

ing program at a third elementary school to be determined later.

(2) Petitioner will not be identified as being mentally retarded or having any handicapping conditions other than her previous classification as speech impaired.

(3) Petitioner will receive core curriculum services in a classroom with an approximate student/teacher ratio of 15 to 1. If the ratio exceeds 17 to 1, parents will be contacted for a conference with administration.

(4) An occupational therapy program to be implemented by the classroom teacher and parents will be developed to improve Petitioner's motor skills. Consultation and monitoring of Petitioner's progress will be provided by the occupational therapist on a regular basis.

(5) Petitioner's progress will be monitored on a regular basis and will be reviewed in a conference with the parents after six weeks in the modified curriculum program. The matter will remain on the docket until after this conference.

Angela's parents, upon receipt of the settlement terms, agreed to waive any claims they had for reimbursement of the costs of the Meyer Center's independent assessment. The parents, however, refused to waive their claim to recovery of attorney's fees from the school district. After being informed that the school district would contest this claim, Angela's parents filed an action in federal district court for reimbursement of the amount of their attorney's fees. The district court ruled that Angela was a "prevailing party" under the terms of the Handicapped Children's Protection Act of 1986, and therefore that her parents were entitled to recover attorney's fees from the school district.

## II. DISCUSSION

The Pasadena Independent School District challenges the district court's award of attorney's fees under the Handicapped Children's Protection Act of 1986, 20 U.S.C. § 1415(e)(4)–(f) (1988). Of the

several issues raised by the school district, only two require serious examination: (1) whether Angela is a "prevailing party" whose parents are entitled to recover their attorney's fees from the school district, and (2) whether the amount of attorney's fees the district court awarded was unreasonable as a matter of law.[1] This Court's scope of review of the district court's decision is narrow. "A district court attorney fee award will be overturned only for abuse of discretion." *Fontenot v. Louisiana Bd. of Elementary & Secondary Education,* 835 F.2d 117, 120 (5th Cir.1988).

### A. *"Prevailing Party" Status*

In 1975, Congress enacted legislation which appropriated federal funds for state special education programs on the condition the states developed a "policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1) (1988). Known now as the Education of the Handicapped Act ("EHA"), the legislation required that states install "procedural safeguards" to ensure that handicapped children and their parents or guardians may effectively oppose institutional decisions affecting educational opportunity. *Id.* § 1415(a). In particular, the legislation afforded parents or guardians of handicapped children the right to present complaints against existing educational programs in impartial administrative due process hearings in which the parties were permitted legal representation. *Id.* § 1415(d)(1).

In its original form, the EHA did not expressly authorize the recovery of attorney's fees. Parents of handicapped children, often already burdened by the prohibitive costs of medical care and equipment, found it difficult to pursue expensive litigation against school districts. To divert some of their expenses, parents attempted to join claims under the EHA with claims based on statutes that permitted the recovery of attorney's fees.[2] The Supreme Court, however, rejected this approach. In *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Court reasoned that the EHA was the exclusive statutory remedy for deprivations of the educational rights of handicapped children and, in the absence of an express provision, did not authorize the recovery of attorney's fees in actions to enforce these rights. *Id.* at 1021, 104 S.Ct. at 3473.

Congress sharply criticized the Court's decision in *Smith* and acted "swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent." *Fontenot v. Louisiana Bd. of Elementary & Secondary Educ.,* 805 F.2d 1222, 1223 (5th Cir. 1986). In the Handicapped Children's Protection Act of 1986 ("HCPA"), Congress amended the EHA to permit the recovery of attorney's fees:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the *prevailing party.*

---

**1.** The school district raises two additional arguments, each of which are meritless. First, the school district maintains that Angela's parents may not initiate a lawsuit solely for the purpose of recovering attorney's fees under the Handicapped Children's Protection Act of 1986. This Court, however, has expressly endorsed the initiation of separate actions to recover attorney's fees under the Act. "To hold that prevailing parties in these hearings cannot bring a separate suit for attorneys' fees would … ignore Congress' obvious preference that the parties resolve these disputes outside the courtroom." *Duane M. v. Orleans Parish School Dist.,* 861 F.2d 115, 120 (5th Cir.1988). Second, the school district maintains that the Act does not permit the recovery of attorney's fees incurred in actions or

proceedings at the administrative level. This Court, however, has expressly permitted recovery of attorney's fees for representation in administrative proceedings. *Shelly C. v. Venus Indep. School Dist.,* 878 F.2d 862, 864 (5th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990).

**2.** In actions brought pursuant to the EHA, parents of handicapped children typically alleged parallel violations of 42 U.S.C. § 1983 and section 504 of the Rehabilitation Act in order to recover attorney's fees under the fee shifting provisions of sections 1988 and 505, respectively. *See* 42 U.S.C. § 1988 (1982); 29 U.S.C. § 794(a) (1982).

20 U.S.C. § 1415(e)(4)(B) (emphasis added).[3] Congressional officials asserted that the legislation represented a critical tool in parents' attempts to secure an appropriate education for their handicapped children. *See* H.R.Rep. No. 296, 99th Cong., 2nd Sess. 15 (1985); 132 Cong.Rec. H4841 (daily ed. July 24, 1986) (statement of Rep. Biaggi).

■ Undoubtedly, the HCPA enhanced the ability of parents to challenge school districts' educational programs. As with most fee shifting legislation, however, Congress limited the availability of attorney's fees awards: the HCPA authorizes courts to award attorney's fees only to the parent or guardian of a handicapped child who has "prevailed" in an action or proceeding against a school district under the EHA.[4] The legislative history of the statute directs that the term "prevailing party" in the HCPA has the same meaning as similar terms in other federal legislation. H.R. Rep. No. 296, 99th Cong., 2nd Sess. 5–6 (1985); S.Rep. No. 112, 99th Cong., 2nd Sess. 13–14 (1985), U.S.Code Cong. & Admin.News 1986, p. 1798. Thus, in interpreting the meaning of "prevailing party" under the HCPA, this Court may look to other fee shifting statutes for guidance. *See Shelly C. v. Venus Indep. School Dist.*, 878 F.2d 862, 864 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990).

■ The United States Supreme Court has determined that the term "prevailing party" under 42 U.S.C. § 1988 (attorney's fees in civil rights litigation) designates a party who has succeeded on any significant issue in litigation which achieves some of the benefit the party sought in bringing the action. *See Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 1489, 103 L.Ed.2d 866 (1989); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). To successfully claim prevailing party status, the plaintiff need only cross a minimal threshold—more than a mere technical or de minimis victory. The significant relief standard comprehends simply "a resolution of the dispute which changes the legal relationship between [the plaintiff] and the defendant." *Texas State Teachers Ass'n*, 109 S.Ct. at 1493.[5] The remedy the plaintiff receives, however, must be legally relevant, even if not factually substantial. A plaintiff is not a prevailing party unless the resolution of the dispute alters the legal relationship of the parties "in a manner which Congress sought to promote in the fee statute." *Id.*[6]

■ The prevailing party analysis in section 1988 actions is pertinent to claims for attorney's fees under the HCPA. Parents' entitlement to prevailing party status depends both on whether the remedy they

---

**3.** The Handicapped Children's Protection Act of 1986 also rejected the Court's conclusion in *Smith* that the EHA was an "exclusive remedy." 20 U.S.C. § 1415(f). Consequently, parents may continue to allege violations of 42 U.S.C. § 1983 and section 504 of the Rehabilitation Act. These statutes permit parents to obtain relief which otherwise is unavailable from the EHA. *See* Guernsey, *The School Pays the Piper, But How Much? Attorneys' Fees in Special Education Cases After the Handicapped Children's Protection Act of 1986*, 23 Wake Forest L.Rev. 237, 238 n. 8 (1988).

**4.** The language of the statute might appear to suggest that the handicapped child, rather than her parents, must be the "prevailing party." In the vast majority of actions under the EHA, however, the parents represent their child in court as next friend. It is conceptually unsound to suggest that parents who are successful in such litigation are not prevailing parties along with the child. Thus, in this opinion, we will speak of both Angela and her parents as prevailing parties.

**5.** As the Court noted in *Texas State Teachers Ass'n*, the degree of the plaintiff's overall success goes toward the reasonableness of the attorney's fees award, not the availability of such an award. 109 S.Ct. at 1493. If the plaintiff exceeds the minimum threshold of success under the prevailing party analysis, she is entitled to recover at least some of her attorney's fees. The Supreme Court rejected the "prevailing party" standard previously applied by this Circuit in *Simien v. City of San Antonio*, 809 F.2d 255, 258 (5th Cir.1987) (standard for prevailing party status is whether plaintiff prevailed on the "central issue" by acquiring the primary relief she sought).

**6.** Trial on the merits is not necessary. A plaintiff may "prevail" even if settlement ends the dispute. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980).

**1194**

attain alters the legal relationship between the school district and their handicapped child and whether the nature of the remedy they attain fosters the purposes of the HCPA. If these two conditions are satisfied, the district court, in its discretion, may award reasonable attorney's fees. 20 U.S.C. § 1415(e)(4)(B).

■■■ The school district argues that Angela's parents cannot demonstrate either of the two conditions for prevailing party status. First, the district complains that the settlement agreement did not alter the legal relationship between Angela and the school district because the relief received in settlement was unrelated to special education and instead was routinely available to all students at parents' specific requests. Second, the school district complains that the items contained in the settlement agreement do not foster the purposes of the HCPA because they are unrelated to Angela's speech impediment, the only handicapping condition acknowledged in the settlement.[7]

■■■ The first of these arguments may be easily dismissed on factual grounds. Even if the items of relief Angela obtained in the settlement ordinarily were available to the general student populace, it appears clear from the record that the school district did not previously offer Angela these items of relief. Angela's parents repeatedly requested that their daughter receive individualized instruction and special therapy; the school district repeatedly denied these requests. Angela's ultimate receipt of these benefits in settlement of her parents' claims was an indisputable success on a "significant issue in litigation."

Parents are not trained educators. While they should certainly be able to recognize serious learning deficiencies, they should not be required to request *specific* educational services for their children. It is the educators' responsibility to evaluate the learning ability of a child and prescribe appropriate educational assistance. In the instant case, the school district neglected its responsibility; despite repeated requests from Angela's parents that their daughter receive individualized instruction and special therapy, the school district did not prescribe special educational services to address Angela's obvious learning incapability, nor did it even recommend available services in the regular educational program. The school district recites no legitimate excuse for its delinquency. It did not object that the parents' requests for assistance were ambiguous or incomprehensible. The parents' requests, even if the school district considered them "general" and not specific, effectively notified school district of the gravity of Angela's educational deficiencies. The school district, in its role under the EHA, should have demonstrated greater willingness to address Angela's deficiencies; it did not. Only the intervention of the parents' attorney prompted the school district to remedy Angela's condition.

The school district's assertion that the remedies it granted Angela are not "special educational services" is disingenuous. The EHA defines special education as "specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction...." 20 U.S.C. § 1401(a)(16). Special educational services include "related services," which are such developmen-

---

7. The school district portrays its second argument as an attack on the district court's jurisdiction; *i.e.,* the school district argues that the district court did not have jurisdiction to grant Angela's parents attorney's fees under the HCPA because the special educational services promised Angela in the settlement agreement did not relate to her only qualifying handicapping condition—speech impairment. This argument misconceives the nature of federal subject-matter jurisdiction. The school district contests the merits of the parents' action—the legitimacy of the parents' claim to relief under the HCPA—

not the very ability of a federal court to grant relief. The weakness of a plaintiff's claim does not divest jurisdiction so long as the claim is not wholly insubstantial or frivolous, or made solely for the purpose of invoking federal jurisdiction. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Eubanks v. McCotter,* 802 F.2d 790, 792–93 (5th Cir.1986). The parents' claim for attorney's fees in the instant case is not insubstantial, frivolous or made solely for the purpose of invoking federal jurisdiction.

tal, corrective and other supportive services required to assist a handicapped child to benefit from special education. *Id.* § 1401(a)(17). Among the available related services are occupational therapy and parent counseling. 34 C.F.R. § 300.13 (1990). In the instant case, it is indisputable that the settlement agreement afforded not only occupational therapy and parent counseling, but also specially designed classroom instruction to meet Angela's unique educational needs—both special education *and* related services. Even if these services ostensibly were available within the regular educational program, they are still special educational services for purposes of the EHA. It is the practical effect of educational services that makes them "special," not their description or label. Angela's receipt of previously unavailable special educational services in settlement of a disputed claim has altered the legal relationship between Angela and the school district.

 The school district's second argument—that the relief Angela received does not foster the purposes of the HCPA because the relief is unrelated to her speech impediment—is equally unpersuasive. The underlying purpose of the HCPA is no different from the underlying purpose of the statute it amends, the EHA—to guarantee "to all handicapped children a free, appropriate public education." *Duane M. v. Orleans Parish School Dist.,* 861 F.2d 115, 117 (5th Cir.1988). The school district concedes that Angela received much of the relief her parents sought for her in the way of an improved education. To determine whether particular forms of relief foster the purposes of the HCPA, the critical question is whether a *handicapped* child receives *any appropriate special services necessary to education* that the child had not received prior to the request for a due process hearing.[8] As long as Angela is handicapped—a fact not in dispute because of her speech impediment[9]—it is irrelevant that any additional services she received from the school district in the settlement agreement are directed toward her general educational enhancement and not her specific disability.

The school district's argument that there must be a nexus between Angela's specific disability and the remedy she received finds no support in the express language of the HCPA. On the contrary, the legislative history of the statute suggests that Congress intended the fee statute to cover any beneficial extension of educational opportunity to handicapped children. One supporter of the legislation commented that the HCPA would ensure that "handicapped children and their parents have available to them the *full range of remedies* necessary to protect and defend both their right to be free from discrimination and their right to a free appropriate public education." 132 Cong.Rec. H4841 (daily ed. July 24, 1986) (statement of Rep. Williams) (emphasis added). Another supporter stated that the HCPA would provide parents of handicapped children "access to *all* avenues needed to ensure their children's right to a free and appropriate education." 132 Cong.Rec. H4841 (daily ed. July 24, 1986) (statement of Rep. Biaggi)

---

8. The school district contends that the EHA would permit inequitable results if this Court fails to require a nexus between the child's handicap and the remedies the child receives. The district argues that in the absence of a nexus requirement, "a speech impaired student expelled from school for arson (behavior which is totally unrelated to his handicap and educational placement) could sue the district in federal court seeking readmission to school; *and* since he is handicapped, he may potentially recover his attorneys' fees." In this scenario, however, the question is not whether the child's parents are entitled to attorney's fees, but rather whether any relief they might obtain would fall within the EHA. Readmission of the child would simply restore the child's previous educational benefits; this remedy is not special education or a related service that advances the unique needs of the child or assures that his rights are protected.

9. Under the Education of the Handicapped Act, the term "handicapped children" means "mentally retarded, hard of hearing, deaf, *speech or language impaired,* visually handicapped, seriously emotionally disturbed, orthopedically impaired, or other health impaired children, or children with specific learning disabilities, who by reason thereof require special education and related services." 20 U.S.C. § 1401(a)(1) (1988) (emphasis added).

(emphasis added). This Court declines to endorse an interpretation of the HCPA that would restrict parents' access to a full range of remedies by limiting the availability of attorney's fees.

The nexus requirement that the school district proposes would carry serious consequences. For instance, it would permit a school district to "lay behind the log" in settlement negotiations with the parents of a handicapped child. Suppose, as in the instant case, a child whom the school district already recognizes as speech impaired suffers a further handicapping condition. To avoid potentially greater liability in litigation, the school district could agree to grant the handicapped child additional special educational services necessary to address the further condition. However, at the same time, the school district could decline to expressly recognize the child's further handicapping condition in order to avoid attorney's fees liability on the extension of the special educational services. We are convinced that Congress did not intend to promote in the HCPA such manipulation of a handicapped child's condition simply to circumvent attorney's fees liability.

The school district in the instant case refused to acknowledge Angela's limited intellectual development, but nonetheless agreed to grant the parents' demands for greater attention to Angela's educational needs. Despite its acquiescence with these demands, the school district complains that Angela should not be regarded as a prevailing party because the settlement agreement did not identify her as "mentally retarded." The school district's argument reflects a preoccupation with *labels* that the EHA and HCPA do not share. While Angela was not *labeled* under the settlement as mentally retarded, she *obtained* in the settlement agreement educational services designed to reverse her educational deficiencies. For all practical purposes, Angela received every remedy her parents requested other than the mentally retarded classification.

When Angela's parents presented the Meyer Center report to the Admission and Dismissal Committee, they undoubtedly desired a determination that their daughter was mentally retarded and required special education. But the fact that the school district did not make such a determination, either in the committee review or the settlement agreement, is not dispositive. The parents of a handicapped child can recover attorney's fees under the HCPA even if they do not obtain their principal objective. In a case involving a Georgia school district, the Eleventh Circuit determined that even though the parents of a handicapped child did not achieve their principal objective of enrolling the child in the local school system instead of a learning center, the parents were still a prevailing party under the HCPA. *Mitten v. Muscogee County School Dist.*, 877 F.2d 932, 936 (11th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1117, 107 L.Ed.2d 1024 (1990). The court noted that "[w]hile the situs may be important, certainly the fundamental objective is the training and education of the child." *Id.* A similar result ensues in the instant case. While the types of disabilities from which a handicapped child suffers may be important, the fundamental objective is the training and education of the child.

There are only two prerequisites of "prevailing party" status under the HCPA: (1) the remedy received under the EHA must alter the legal relationship between the parties, and (2) the nature of the remedy must foster the purposes of the HCPA. Although the school district refused to classify Angela as mentally retarded, Angela's parents successfully obtained from the school district valuable educational services designed to meet the unique needs of their handicapped child. These previously unavailable services have effectively altered the legal relationship between the school district and Angela. The services granted in the settlement agreement are not designated "special educational services," but they have the operation and effect of special educational services—they permit Angela a free and *appropriate* education. Accordingly, the educational services foster the purposes of the HCPA. Angela is a prevailing party under the terms of the Handicapped Children's Protection Act of

1986, and her parents are entitled to recover their attorney's fees.

## B. *Reasonableness of Fees*

■ An award of attorney's fees must be reasonable and based on the prevailing rates in the community for the kind and quality of services furnished. 20 U.S.C. § 1415(e)(4)(C) (1988). Typically, a court derives the amount of the attorney's fees award by multiplying the customary hourly rate for the services rendered and the number of hours reasonably expended. The court may in turn adjust this figure on the basis of several factors, which include:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the 'undesirability' of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 1937 n. 3, 76 L.Ed.2d 40 (1983) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)). Four of these factors—the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation, and ability of counsel—are particularly significant. *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 583 (5th Cir.1980).

■ The school district argues that the district court's award of attorney's fees was so excessive as to constitute an abuse of discretion. The school district challenges the district court's refusal to adjust its fees award on the basis of several enumerated factors, including the novelty and difficulty of the questions presented and the results obtained. The court, however, specifically addressed these factors, concluding that the questions involved in the case were "not unique" and the results obtained were "significant." District Court Order at 13. This Court is not inclined to disturb these conclusions. The school district's complaint of the reasonableness of the attorney's fees award echoes its substantive challenge that the relief Angela's parents recovered was "de minimis." Perhaps the fact that a plaintiff failed to receive substantial relief might support a reduction in fees,[10] but in the instant case the relief Angela recovered was hardly de minimis. As already noted, Angela received a wide variety of benefits in the settlement agreement; indeed, she received virtually all of the remedies her parents requested. We find no abuse of discretion in the amount of the attorney's fees award.

■ We recognize, however, that the district court's award is no longer adequate to cover the fees of the parents' attorney. Because the school district has pursued this appeal, the parents' attorney was required to expend additional time and energy defending her clients' rights. The parents are entitled to reimbursement for the additional fees their counsel has incurred. *Fontenot v. Louisiana Bd. of Elementary & Secondary Educ.*, 835 F.2d 117, 121 (5th Cir.1988). Accordingly, this Court remands this case to the district court for consideration of the amount of attorney's fees reasonable for this appeal.

## III. CONCLUSION

The school district in this case dragged its feet in providing necessary special instruction to a handicapped child, and then dragged its feet in paying fees that would compensate the attorney who represented the child. When the school district finally acted to enhance the educational opportuni-

---

**10.** *See Texas State Teachers Ass'n,* 109 S.Ct. at 1493.

ties of the child, it did not act out of beneficence, but rather because an attorney prompted action. The parents of the handicapped child are entitled to recover an amount sufficient to reasonably compensate their attorney for her efforts. The judgment of the district court is affirmed and the action is remanded for consideration of the amount of attorney's fees reasonable on this appeal.

AFFIRMED AND REMANDED.