**VERGINIA McC, by next friends MR. AND MRS. McC, Plaintiff,**

v.

**CORRIGAN–CAMDEN INDEPENDENT SCHOOL DISTRICT, Defendant.**

Civ. A. No. 9:93cv116.

United States District Court,
E.D. Texas,
Lufkin Division.

Dec. 13, 1995.

Beatrice Mladenka, Fowler, Daniel L. McCall, Houston, TX, for plaintiff.

Paul William Hunn, James Neil Hollis, Walsh, Anderson, Underwood, Schulze & Aldridge, PC, Austin, TX, for defendant.

## MEMORANDUM OPINION ON SUMMARY JUDGMENT

HEARTFIELD, District Judge.

### 1. Introduction

Verginia ("Ginger") McC, represented by next friends Mr. and Mrs. McC, sues Corrigan–Camden Independent School District for reimbursement of attorneys fees incurred in the prosecution of a state administrative due process hearing before a Texas Education Agency Hearing Officer. Ginger's parents claim that they were a prevailing party at the administrative hearing, entitling them to all attorneys' fees under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(e)(4). The school district responds that plaintiffs did not prevail at the hearing, and even if they did prevail, the victory was so limited that they should not recover attorneys fees.

The matter is now pending before this court on cross motions for summary judgement. The court has considered the motions, briefs and all evidence. For the reasons set forth below plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Defendant's motion for summary judgment is DENIED.

### 2. Facts

No dispute exists as to the underlying material facts of this case. Ten-year old Ginger McC is eligible for special education services as a health impaired, learning disabled, and speech handicapped child. Ginger also has a seizure disorder which interferes with her instruction.

Ginger has attended school and received special education services from the Corrigan–Camden ISD since 1988. As a pre-first grade student (1990–1991), she received special education instruction in a resource room in language/reading, spelling, handwriting, and math. She received instruction in regular education in social studies, science, health, fine arts, music, and physical education. For the first half of the first grade (1991–1992), Ginger received the same type of instruction as in the previous year.

On January 6, 1992, halfway through the first grade, Ginger was hospitalized for sei-

zures. For the remainder of the school year, Ginger received homebound services from the school district. An Admission, Review, and Dismissal (ARD) Committee developed an Individualized Education Program (IEP) for her homebound placement. In May 1992, an ARD committee recommended moving Ginger into a second grade LIFE skills program which focused on learning academic and nonacademic skills. Ginger's parents initially agreed to this placement which they thought would be temporary. Therefore, Ginger began her second grade school year (1992–1993) in the LIFE skill program.

The dispute which led to plaintiff's request for a hearing originated at two October 1992 ARD committee meetings concerning Ginger's placement. Ginger's parents wanted her taken out of the LIFE skills program and placed back in a resource classroom. They argued for a placement change into a less restrictive environment because Ginger was not intellectually challenged by the LIFE program, had regressed in the LIFE program, and was being unnecessarily segregated from the other students. Ginger's parents also presented the committee with a list of other requests. The school board granted all of the requests except for placing Ginger back into a resource class with additional one-on-one aid. The committee found that a resource class would have been inappropriate for Ginger. On October 26, 1992, Ginger's parents filed a request for a special education due process hearing to change their daughter's placement.

The parties made several attempts to reach a settlement. On December 4, 1992, defendant faxed a letter to plaintiff which provided an offer of settlement on nine items. The parties communicated back and forth a number of times throughout December. On January 5, 1993, plaintiff faxed defendant a letter listing eight items of partial settlement, mirroring the defendant's offer except as to the issue of classroom placement. The defendant responded on January 7th that they agreed to the settlement but that their agreement would "not make the parents 'prevailing parties' for purposes of attorney's fees." The following day, January 8, 1993, plaintiff spoke with defendant stating that plaintiff wanted to be compensated for attorneys fees. Therefore, the parties did not settle.

A hearing officer conducted a due process hearing from January 11–13, 1993 on the following issues:

(1) that Petitioner's current educational placement and individualized education plan ("IEP") are inappropriate and are being implemented in an unnecessarily restrictive environment;

(2) that Petitioner has been denied a free appropriate public education and that Petitioners are entitled to reimbursement for private tutoring; and

(3) that Petitioners' procedural rights under IDEA have been violated because of the failure of the Respondent to provide certain documentation to Petitioners.

The decision of the hearing officer included a fourth issue: "Petitioners challenged the educational placement provided for the child because measurable goals and objectives were not included in her IEP." Petitioner prevailed on the fourth allegation when the hearing officer ordered the school board to convene an ARD committee meeting to incorporate measurable goals and objectives into the IEP developed for the child.[1] All other

---

1. The term "individualized education program" means a written statement for each child with a disability developed in any meeting by a representative of the local educational agency ..., the teacher, the parents or guardian of such child, and whenever appropriate, such child, which statement shall include—

    (A) a statement of the present levels of educational performance of such child,

    (B) a statement of annual goals, including short-term instructional objectives,

    (C) a statement of the specific educational services to be provided to such child, and the

extent to which such child will be able to participate in regular education programs,

    (D) a statement of the needed transition services for students beginning no later than age 16 ... before the student leaves the school setting,

    (E) the projected date for initiation and anticipated duration of such services, and

    (F) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

20 U.S.C. § 1401(a)(20).

relief sought by Petitioner, under issues 1–3, was denied.

## 2. Standard for a Grant of Summary Judgment

█ First the court notes that summary judgement is only appropriate where the party seeking summary judgment demonstrates through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, that no genuine issue of material fact exists, and that the moving party is entitled to a judgment as a matter of law. FED. R.CIV.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this case, no dispute exists as to the material facts involved in the claims upon which summary judgment is granted. The only determination this court must make is whether any of the moving parties are entitled to summary judgement as a matter of law. The issues of law involved in the two motions for summary judgment are the same, so the court will analyze them at once, and then indicate its ruling on each motion.

## 3. Prevailing Party Status Under The Individuals with Disabilities Education Act

The plaintiffs seek attorneys fees based on provisions in the Individuals with Disabilities Education Act ("IDEA"), codified at 20 U.S.C. § 1400 et seq. This act, originally known as the Education of the Handicapped Act ("EHA") of 1975, provides federal money to states in order to assist them in providing "a free appropriate public education" to children with disabilities. It requires that states provide procedural safeguards giving handicapped children the opportunity to present complaints about existing educational programs. The EHA, however, did not express-

ly authorize attorneys fees. In the past, courts declined to provide attorney fees under other attorney fees statutes. Eventually, in 1986, Congress amended the EHA to permit the recovery of attorney's fees. The Handicapped Children's Protection Act ("HCPA"), 20 U.S.C. § 1415(e)(4)(B) provides, [i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys fees as part of the costs to the parents or guardian of a child or youth with a disability *who is a prevailing party* (emphasis added).

█ The Senate report concerning the fee recovery provision of HCPA, 20 U.S.C. § 1415 stated that the term "prevailing party" be construed consistent with the standard set out in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), a case based on the Attorneys Fees Awards Act, 42 U.S.C. § 1988. *Hensley* defines prevailing party as one who succeeds "on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit." *Id.* at 433, 103 S.Ct. at 1939, *quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1987).

The Supreme Court has also applied the *Hensley* standard in attorneys fees cases brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983. In *Texas State Teacher's Association v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the court characterized a prevailing party as "one who has succeeded on any significant claim affording it some of the relief sought." It rejected the central issue test applied by the court below. The court further held that "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* at 792, 109 S.Ct. at 1493. The court stressed that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Id.*

Each IEP is required to incorporate measurable goals and objectives. Ginger's plan did contain goals and objectives but did not contain a way to *measure* Ginger's progress in the goals and objectives. The hearing officer's finding re-

quired an ARD committee to meet and set percentile scores of mastery on all goals and objectives. For all goals that were not measurable by %, another means of mastery on all goals and objectives had to be set.

■ The Fifth Circuit finally decided a case based specifically on the attorney's fees provision of the Handicapped Children's Protection Act. *Angela L. v. Pasadena Independent School District*, 918 F.2d 1188 (5th Cir.1990). The court in *Angela L.* interpreted the *Texas State Teacher's Association* standard. It found that "to successfully claim prevailing party status, the plaintiff need only cross a minimal threshold—more than a mere technical or de minimis victory." The significant relief standard comprehends simply "a resolution of the dispute which changes the legal relationship between [the plaintiff] and the defendant." *Id.* at 1193, *quoting Texas State Teacher's Assn.*, 489 U.S. at 792, 109 S.Ct. at 1493. The court went on to state that "[t]he remedy that the plaintiff receives, however, must be legally relevant, even if not factually substantial." A plaintiff is not a prevailing party unless the resolution of the dispute alters the legal relationship of the parties "in a manner which Congress sought to promote in the fee statute." *Id.*

By interpreting the previous case law, *Angela L* narrowed the test for prevailing party status to a two part test: (1) whether the remedy attained alters the legal relationship between the school district and the handicapped child and (2) whether the nature of the remedy fosters the purposes of the HCPA. *Angela L. v. Pasadena I.S.D.*, 918 F2d at 1194.

The first prong of the *Angela L.* test is whether the remedy obtained altered the legal relationship of the parties. This turns on whether the hearing officer's determination that (1) measurable goals and objectives were not included in Ginger's IEP and (2) an ARP committee be ordered to convene to assign ways to measure Ginger's progress of these goals and objectives, constitutes a change in the legal relationship of the parties.

Defendant argues that the plaintiff is not a prevailing party under the first prong of the test. The school district specifically contends that Ginger's parents did not prevail on any significant issue in the litigation, nor did they effect a material alteration in the parties' legal relationship. Specifically, the defendant claims that plaintiffs never complained of the omission of percentage mastery criteria on the specific measurable goals and objectives prior to the hearing.

■ First we must determine whether the issue of *measurable* goals and objectives was an issue in litigation. The only evidence we find where the plaintiffs specifically request measurable goals was at the November 14, 1992 ARD committee meeting. There the plaintiffs presented the committee with a list of eight requests. One of the requests was "math, reading, language with short term *measurable* goals" (emphasis added). Another more general request was for an "individualized IEP to meet her needs." The ARD committee agreed that day to comply with both of these requests. The only request that was not agreed to· had to do with Ginger's placement. That is, the ARD committee did not agree to move Ginger to a less restrictive environment of "1 on 1 in a resource class with an aide all day." Because the ARD committee refused ·to change Ginger's placement, her parents decided to request a due process hearing. In the petitioner's request for a hearing one of the three allegations read: "Petitioner's current individualized educational plan ("IEP") are inappropriate and are being implemented in an unnecessarily restrictive environment." Although the plaintiff's main concern was to change Ginger's placement, the allegation on its face states that the "IEP [is] inappropriate." This broad allegation could be read to include petitioner's complaint that the IEP did not contain measurable goals and objectives. Additionally, the testimony during the hearing indicated that ARD committee members were aware that Ginger's parents requested measurable goals and objectives. During the due process hearing, the school district admitted that as an oversight mastery levels were not included in Ginger's IEP. The school district also conceded that the mastery levels are important so that parents and teachers will know the overall potential of a child in a particular skill area. Finally, the *Synopsis* in the *Decision of the Hearing Officer* lists the issue of measurable goals and objectives as a fourth allegation. For theses reasons, the court finds that

measurable goals and objectives was an issue in litigation.

▮ Second, the court finds that the plaintiffs won the issue of measurable goals and objectives on the merits. Specifically, the hearing officer's decision determined that Ginger's educational placement as developed in the ARD committee meeting in October 1992 did not include specific measurable goals and objectives as required by 34 C.F.R. § 300.346(a)(5). He requested that the school district convene an ARD committee meeting to incorporate measurable goals and objectives into the IEP developed for the child.

▮ Third, the court must determine whether prevailing on the merits of one issue means that the remedy altered the legal relationship between the parties. The judgment legally forced an ARD committee to meet to assign mastery levels to the goals in

Ginger's IEP. The fact that this was not the central issue in litigation does not matter when determining a change in the legal relationship between parties. *See Texas State Teacher's Association v. Garland Independent School District,* 489 U.S. at 792, 109 S.Ct. at 1493. The fact that the plaintiffs won a minor victory compared to the relief sought, does not matter when determining a change in the legal relationship between parties. *See Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). The court holds that because Ginger won on the merits of one of her claims,[2] the hearing officer's determination did alter the legal relationship between parties.[3]

Defendant also argues that it never took the position that Ginger was not legally entitled to percentage mastery criteria on her annual objectives. Consequently, the school district reasons that the hearing officer's de-

**2.** This court bases its holding that Ginger is a prevailing party on what some courts have named the "merits test." *See Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978) (Sets forth two tests for that awarding of attorneys fees to a prevailing party: merits test and catalyst test); *Kerry B. v. Union 53 Public Schools,* 22 IDELR 678 (D.Mass.1995). When applying the attorneys fees provision in IDEA cases, the Fifth Circuit has only used the merits test. However, the Fifth Circuit has used the catalyst test to allow prevailing civil rights litigants to recover attorneys fees under 42 U.S.C. § 1988. The catalyst test applies when plaintiffs show that "their lawsuit was a significant catalytic factor in achieving the primary relief sought through litigation despite failure to obtain formal judicial relief." *Robinson v. Kimbrough,* 652 F.2d 458, 465 (5th Cir.1981).

**3.** Defendant argues that *Salley v. Tammany Parish School Board* controls Ginger's case. In *Salley,* the court found that the Salleys were not prevailing parties for purposes of attorneys fees under IDEA. The court, however, followed *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), a Supreme Court case based on the attorney's fee provision in 42 U.S.C. § 1988. The *Salley* court used the rule that in determining prevailing party status under 42 U.S.C. § 1988, "a plaintiff prevails when actual relief on the merits materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. at 111–112, 113 S.Ct. at 573. The *Salley* court applied the rule by stating that "the Salleys did not obtain residential placement for Danielle, which was their primary objective. The Salleys

sole victory in the district court—a finding that St. Tammy had procedurally violated the Act— did not materially alter the legal relationship between parties, as evidenced by the Salleys' receipt of only nominal damages."

However, this application goes against the holding in *Farrar.* In *Farrar,* the court found that although the plaintiffs obtained only nominal relief, they were the prevailing party. Again, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *Farrar v. Hobby,* 506 U.S. at 111–112, 113 S.Ct. at 573. A material alteration occurs when the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant. A plaintiff may demand payment for nominal damages. *Id.* A defendant is then required to pay an amount he otherwise would not have paid. *Id.* The prevailing party inquiry does not turn on the magnitude of the relief obtained and the degree of the plaintiff's success does not affect the eligibility for a fee award. *Id.* The court went on to explain that although the degree of the plaintiff's overall success does not bear on the prevailing party inquiry, it does bear on the propriety of the fees awarded or the reasonableness of the fees. *Id.* Indeed the "most critical factor" in determining the reasonableness of the fee award "is the degree of success obtained." *Id; citing Hensley v. Eckerhart,* 461 U.S. at 436, 103 S.Ct. at 1941. Therefore, the holding of *Farrar* favors a ruling that a party is a prevailing party as long as that party won some sort of judgment. The degree of success only matters in determining the amount of attorneys fees.

cision did not cause any material change in the parties' legal relationship—the hearing officer told the defendant to do what the defendant was already legally obligated to do, but had simply omitted to do through inadvertinance. In response to defendant's argument, the court looks to the case of *Angela L.* There, the school board settled their case, granting Angela relief to which she was legally entitled and the general student population already received. Although she was previously entitled to the services, Angela did not receive them from the school district before the initiation of legal action. *Angela L. v. Pasadena Independent School District,* 918 F.2d at 1194. Similarly, in the current case although Ginger was entitled to measurable goals and objectives in her IEP, she did not receive them until the hearing officer's determination. Therefore, the hearing officer's determination altered the legal relationship between the parties.

■ The second prong of the *Angela L.* test for prevailing party status is easily met. The nature of the remedy fosters the purposes of the act. The underlying purpose of the HCPA is no different from the underlying purpose of the statute it amends, the EHA—to guarantee "to all handicapped children a free, appropriate public education." *Angela L. v. Pasadena Independent School District,* 918 F.2d at 1194 *quoting Duane M. v. Orleans Parish School Board,* 861 F.2d 115, 117 (5th Cir.1988). To determine whether particular forms of relief foster the purposes of the HCPA, the critical question is whether a handicapped child receives any appropriate special services necessary to education that the child had not received prior to the request of a due process hearing. *Angela L. v. Pasadena Independent School District,* 918 F.2d at 1195. As a result of a due process hearing, Ginger received an Independent Educational Plan with specific measurable goals and objectives as required by 34 C.F.R. § 300.346(a)(5). Ginger received an educational benefit that she was entitled to but was not receiving prior to the due process hearing. Therefore, the court holds that both prongs of the *Angela L.* test are met and Ginger is a prevailing party under IDEA for purposes of attorneys fees.

### 4. Defendant's Settlement Offer

Even if the plaintiff is found to be a prevailing party, she is not entitled to attorneys fees for work undertaken after a settlement offer if "the court or administrative officer finds that the relief finally obtained by the parent or guardian is not more favorable than the offer of settlement." 20 U.S.C. § 1415(e)(4)(D)(iii). Therefore, if the settlement offer is equal to or better that the finding of the hearing officer, the plaintiff can only recover attorneys fees up to the date of the settlement offer.

■ The Corrigan–Camden ISD did in fact make a settlement offer to Ginger's parents on December 4, 1992. One of the provisions of the settlement offer proposed an "ARD scheduled no later than February, or otherwise pending assessment, to review Ginger's status and consider parent's objections, if any, to IEP goals and objectives." This offer was not equivalent to the hearing officer's order that an ARD committee convene "to incorporate measurable goals and objectives into the IEP developed for the child." On its face, the offer did not mention "measurable goals" or percentile scores of mastery on goals and objectives. Neither did the offer promise on its face that percentages or measurable goals would be set. The offer only proposed a meeting to "consider" plaintiff's objections to IEP goals and objectives. For these reasons attorneys fees will not be reduced because of the settlement offer.

### 5. Calculation of Attorneys' Fees

■ An award of attorney's fees must be reasonable and based on the prevailing rates in the community for the kind and quality of services furnished. 20 U.S.C. § 1415(e)(4)(C). Typically, a court derives the amount of the attorney's fee award by multiplying the customary hourly rate for the services rendered and the number of hours reasonably expended. *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939. The court may in turn adjust this figure on the basis of several factors including:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client;

(12) awards in similar cases.

*Id.* at 430 n. 3, 103 S.Ct. at 1938 n. 3 (1983) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). Four of these factors—the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation, and ability of counsel—are particularly significant. *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 583 (5th Cir.1980).

██ The court in *Hensley* focuses on the importance of the "results obtained." This factor is particularly crucial where a plaintiff is deemed prevailing even though he succeeded on only some of his claims for relief. In such a situation, the court can determine whether counsel's work on one claim was unrelated to his work on another claim. Accordingly, a court should not award attorney's fees for work on an unsuccessful claim. Some cases will present a single claim, or involve a common core of facts, or will be based on similar legal theories. Much of the attorneys time will be devoted to the litigation as a whole making it difficult to divide the hours expended on a claim-by-claim basis. *Hensley v. Eckerhart*, 461 U.S. at 435, 103 S.Ct. at 1940. "Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

██ If the plaintiff obtained limited success, the hours reasonably spent on the case times the reasonable hourly rate may be excessive. The most critical factor is the degree of success obtained. *Id.* at 436, 103 S.Ct. at 1941. There is no rule or formula for the court to follow in making these determinations. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.*

In the current case, plaintiffs request payment of $68,470.78 ($62,045 in attorneys fees plus $6,398.34 in costs). The attorneys fee portion is based on different hourly fees for the two attorneys. One attorney, practicing law since 1983, charged $200 per hour up through December 1994 and raised her fee to $225 per hour in January 1995. Another attorney, practicing special education law since 1990, charged $150 per hour. Defendants claim that they charged their client $135 per hour for handling this suit. They ask that the plaintiff's hourly fee be reduced to $135 or less.

██ First, the court must determine the reasonableness of the hourly fees charged. Plaintiff's counsel provided the court with their own affidavits and the affidavit of another attorney stating that the rates requested are the prevailing rates in the community. Counsel presented no other evidence of the prevailing community rate for IDEA cases in the Beaumont or Houston, Texas area. Therefore, this court will look to the case law. In a similar case for attorneys fees under IDEA, a court in the Eastern District of Texas reduced the rate of an attorney who had been practicing disability law for five years from $175 to $125 per hour. *Lewisville Independent School District v. Pemberton*, 17 EHLR 346 (E.D.Tex 1991). Most attorneys fee awards under IDEA fall within the $125–$150 range. *See Beard v. Teska,* 31 F.3d 942 (10th Cir.1994) ($125 per hour); *Massachusetts Dept. of Public Health v. School Committee of Tewksbury,* 841 F.Supp. 449 (D.Mass.1993) ($150 per hour for attorney with 10 years experience and $130 for attorney having seven years experience); *Grinsted By and Through Grinsted v. Houston County School Dist.,* 826 F.Supp. 482

(M.D.Ga.1993) ($150 per hour); *Mr. and Mrs. W. v. Malito,* 19 IDELR 901 (C.D.Ill. 1993) ($175 per hour and $125 per hour); *Holmes v. Sobol,* 18 IDELR 53 (W.D.N.Y. 1991) ($150 per hour, $125 per hour and $100 per hour); *Williams v. Boston School Committee,* 709 F.Supp. 27 (D.Mass.1989) ($125 per hour). This court only found one case that awarded $200 per hour in attorneys fees because the attorney has 30 years experience. *Bailey v. District of Columbia,* 839 F.Supp. 888 (D.D.C.1993). Because the prevailing community rate appears to be between $125–$150 per hour, this court will reduce the $200 and $225 fee to $150 per hour and the $150 fee to $125 per hour. This reduces the amount of attorneys fees from $62,045 to $49,821.50.

▮ Now the court must consider the reasonableness of the attorneys fees in light of the significance of the overall relief obtained. The court finds that the plaintiffs prevailed on one issue out of four which was not the significant issue in litigation. Additionally, the issue of measurable goals and objectives was not a complex legal issue and would not have taken as long to prepare as the other issues. Therefore, the court reduces the award for attorneys fees for legal representation at the administrative level. Plaintiffs will recover for one-forth of the hours spent at the administrative level. Of the 161.5 hours spent working at the administrative level, plaintiff will recover for 40.375 (multiplied by $125 because they were all billed by the attorney charging the lower rate) for the amount of $5,046.88. Attorneys fees for this federal court action will not be reduced. Whether plaintiffs would have won on one issue or more, a suit for attorneys fees would have required similar preparation time. In sum, this further reduces the attorneys fees from $49,821.50 to $34,680.87.

▮ Plaintiff also seeks recovery of costs in the amount of $6,398.34. Costs, as used in the Federal Rules of Civil Procedure and in the federal attorneys fees statutes, usually refer only to those charges that one party may recover from the opponent as an incident to the judgment in the action, not to the total liability he has incurred. *Copper Liquor v. Adolph Coors,* 684 F.2d 1087, 1098

(5th Cir.1982). The costs statute, 28 U.S.C. § 1920, lists only six items as taxable costs. If proved, all expenditures for these should be allowed. The statutory items are:

(1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries fees, expenses, and costs of special interpretation services under section 1828 of this title.

*Id.* Accordingly, the plaintiff will only recover for the costs set forth in the statute including all transcripts, photocopies, video copies, and filing fees. The plaintiff will also receive $500 for the testimony of the expert witness at the due process hearing. The court will not award costs for transportation, parking, food, postage, telephone calls, or the written expert report of Nora Hernandez. In sum, defendant will pay plaintiffs a total of $1897.11 in costs.

**7. Statute of Limitations**

▮ The IDEA establishes procedures under which a parent may appeal a state administrative decision to a state or federal court. However, the statute is silent as to the appropriate limitations period. When a federal statute creates a right but does not specify a period of limitations, federal courts generally determine which state cause of action is most analogous to the federally created cause of action. If the limitations period applicable to the analogous state cause of action is consistent with the underlying policy of the federal act, the court will borrow that limitations period and apply it to the federal cause of action. *Scokin v. State of Texas,* 723 F.2d 432, 436 (5th Cir.1984) *citing Occidental Life Insurance Company of California v. E.E.O.C.,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977).

▮ The most analogous state cause of action to a suit filed under the IDEA would seem to be an appeal from a state agency to

a state court. In Texas, such appeals are governed generally by a thirty day statute of limitations. *Scokin,* 723 F.2d at 437. However, the court in *Scokin* found that the thirty day limitation period is inconsistent with the policies underlying the IDEA. Thirty days was not enough time to allow parents to make the preparations for taking their case from an administrative process to federal court. *Id.* at 438. The *Scokin* court held that the most appropriate state limitations period for IDEA actions in Texas is the two year period generally applicable to tort claims. TEX.REV.CIV.STAT.ANN. art. 5526 (Vernon Supp.1982–83). *Scokin,* 723 F.2d at 438.

Defendants argue that plaintiff's claim is time barred. Plaintiff, Ginger McC and her parents filed this suit 146 days after the hearing officer entered his order and well within the two year limitation period.

### 8. Conclusion

Under this opinion, the court enters an order,

GRANTING IN PART AND DENYING IN PART plaintiff Verginia McC's motion for summary judgment;

DENYING defendant Corrigan–Camden Independent School District's motion for summary judgment;

ORDERING defendant to pay plaintiff costs in the amount of $1897.11 and attorneys fees in the amount of $34,680.87, for a total judgment in the amount of $36,577.98.

ORDERING that any other pending motions are denied as moot.